WILKERSON v. ALLEN *et al.*, *Appellants.*

1. **Partnership Real Estate**: PRESUMPTION FROM LAPSE OF TIME. The patent for certain land was issued to S & R, who composed a firm. S executed a power of attorney to V to sell and convey any property belonging to the firm. Within three months thereafter, V as attorney for S and R personally executed a conveyance of the land as partnership property. Forty-five years elapsed without complaint on the part of S or any one representing him. In an action of ejectment against a third party, by one claiming under this conveyance, it was *Held*, that the acquiescence of S, in the treatment of the land as partnership property, would be presumed.

2. **Administrator's Sale of Real Estate**: AFFIDAVIT TO PETITION FOR SALE. The fact that the affidavit to an administrator's petition for an order to sell real estate for the payment of debts is not made in literal compliance with the law, will not render the proceedings wholly void, (*following Rugle v. Webster*, 55 *Mo.* 246).

3. ——: APPROVAL AT ADJOURNED TERM. The approval of an administrator's sale of real estate at an adjourned term, instead of the regular term of the court, will not vitiate the sale, (*following Sims v. Gray*, 66 *Mo.* 613.)

4. **Administrator's Deed**: FINAL SETTLEMENT by an administrator of his accounts, without resignation or discharge from his trust, does not deprive him of the power to execute a deed to real estate in consummation of a sale made and approved by the court before the settlement.

5. ——: The failure of an administrator to take security for the purchase money of real estate sold under an order of court, as required by the order, will not render his deed a nullity, when the fact has been reported to the court and the sale has been approved notwithstanding.

6. **Mortgage to Administrator**: DEED UNDER THE MORTGAGE. An administrator, upon a sale of real estate, received from the purchaser a mortgage with a power of sale, wherein he was described as administrator; *Held*, that he could not hold the land in that character, and that, upon a sale by him under the power, the execution of a deed by him, in his own right and character, was proper.

7. **Sale Under a Mortgage**: PROOF OF NOTICE. When a deed executed by a mortgagee, in pursuance of a sale under the mortgage, is assailed on the ground that there was no proper advertisement of the place of sale, if the deed contains no recital showing what place was named in the hand-bills, by which notice of the sale was given, and the hand-bills are lost, parol evidence is admissible for the purpose of supplying the proof.

8. **Mortgage:** WHEN POSSESSION IS NOT ADVERSE TO MORTGAGEE. When one enters upon land which is subject to a mortgage, under a contract with the mortgagor, to pay off the mortgage debt, his possession is not adverse to that of the mortgagee.

9. **Married Woman, when Bound by her Husband's Acts.** If a deed is made to a married woman in pursuance of a contract of purchase by the husband, and he pays the purchase money, she is bound by his acts done under and in pursuance of the contract.

10. **Practice in the Supreme Court.** A judgment will not be reversed because of the exclusion of competent evidence, when it could not and should not, if admitted, have produced a different result.

*Appeal from Callaway Circuit Court.*—HON. G. H. BURCK-HARTT, Judge.

*G. B. McFarlane, W. Lewis* and *Thos. N. Musick* for appellants.

1. Nesbit could sell upon the individual note of the purchaser; if so, he might sell upon his oral promise to pay, as well. *Jarvis v. Russick,* 12 Mo. 63; *Foster v. Thomas,* 1 Am. Law Reg., (O. S.) 565. 2. The report of sale should have been made at the next term of court after such sale. *State to use of Perry v. Towl,* 48 Mo. 148; *Speck v. Wohlien,* 22 Mo. 310; *Strouse v. Drennan,* 41 Mo. 289; *Mitchell v. Bliss,* 47 Mo. 353; *Castleman v. Relfe,* 50 Mo. 583; *Dulle v. Deimler,* 28 Mo. 584. 3. He had no power to make the deed to Bailey, after his failure for six years to comply with the order of sale, without then making payment for the land or even complying with the terms of sale, and after the final settlement was made. *Bompart v. Lucas,* 21 Mo. 598; *Garner v. Tucker,* 61 Mo. 427. 4. He could not relieve himself from his duty to sell and convey under the orders of the court, simply and only. He could not take back to himself a mortgage to secure the purchase money of the land, and had no power to make a second sale. *Gaines v. Allen,* 58 Mo. 537; *Reddick v. Gressman,* 49 Mo. 389. 5. Nesbit's testimony as to the advertisement of

sale under the Bailey mortgage, was no evidence at all. *Stephenson v. January*, 49 Mo. 465; *Thornburg v. Jones*, 36 Mo. 514; *Stine v. Wilkson*, 10 Mo. 75; *Powers v. Kueckhoff*, 41 Mo. 425; *Hambright v. Brockman*, 59 Mo. 52. 6. Where husband and wife go into possession of land under a deed to the wife and children, the recognition by the husband of a mortgage upon the land will not estop the wife and children from claiming under such deed or prevent the running of the statute of limitations. *Sharp v. Freeman*, 45 N. Y. 802; 1 Wash. on Real Prop., (3 Ed.) pp. 141, 425; Gen'l Stat. of 1865, p. 444, § 14.

*Boulware & Hockaday* for respondent.

1. The fact that Nesbit's deed was made after his final settlement does not effect its validity. He was still administrator. *Garner v. Tucker*, 61 Mo. 427; *Rugle v. Webster*, 55 Mo. 246; *McVey v. McVey*, 51 Mo. 406; *Kiley v. Cranor*, 51 Mo. 541. 2. There was no such irregularity in the sale that appellants can take advantage of it in this proceeding. 3. The purchase of James G. Allen was made with a full knowledge of the existence of the mortgage by David to Nesbit; the purchase was made subject to this mortgage, and was recognized by him by the payment of $450.00 thereon.

HENRY, J.—At the November term, 1874, plaintiff instituted his suit against James G. Allen to recover possession of sixty acres of land, the north part of the west half of the southwest quarter of section No. 20, township 47, range 9, lying in Callaway county. Pending said suit, said Allen died, and his widow and heirs were substituted as defendants. They answered, admitting that they were in possession, but denying plaintiff's title. A trial was had, resulting in a verdict and judgment for plaintiff, from which defendants have duly prosecuted their appeal. The evidence adduced by plaintiff to prove his title, was:

1. An exemplification of patent No. 996, from the United States to Alexander Scott and W. B. Rule, conveying the southwest quarter of section 20, township 47, range 9, embracing the land sued for. The patent was issued in 1833. 2. A power of attorney from Alex. Scott, one of said patentees, to J. B. D. Valois, empowering him to sell and convey any property, real or personal, belonging to the firm of Scott & Rule, or any interest in, or growing out of, the same, to which said Scott might be entitled in law or equity. 3. The record of a deed from said Valois, as attorney in fact, and said William K. Rule and wife, to Jesse Lindell and George Collier, made in consideration of one dollar, and of the uses and trusts contained in a deed of trust of even date therewith, executed by said Scott & Rule to said Lindell & Collier, conveying said land for the benefit of the creditors of said Scott & Rule, the former confirming said first deed, and authorizing Lindell & Collier to sell the land in such manner, and at such time and place, and for such price as they should deem expedient. 4. The record of a deed from Lindell & Collier to James Allen. 5. Letters of administration on Allen's estate to T. B. Nesbit, dated December 21st, 1854. 6. A petition by said administrator to the county court of Callaway for an order to sell said land for payment of debts of the deceased, filed February 23d, 1856. 7. An order by said court for the sale of the same, on twelve months' credit, and requiring bond and security for the purchase money, made August 7th, 1856. At the October term, 1856, of the circuit court of Callaway county, the administrator sold the land to Isaac Bailey. 8. Report of sale by the administrator to the county court, made at an adjourned term of the November court, held in January, 1857, and the approval of the report by said court. At said sale, Isaac Bailey became the purchaser of the land in dispute, but did not execute a bond with security, and that fact was stated in the administrator's report of the sale. Nesbit made a final settlement of the estate in November, 1861,

which showed the estate indebted to him in the sum of $812.56. There was no order discharging him as administrator. On the 7th of August, 1862, he executed and delivered a deed as administrator, conveying said land to said Bailey, who contemporaneously made a mortgage of said land to Nesbit to secure the balance of purchase money which Bailey owed. In 1857 he made a payment on the note, and also one in 1859, but what amount does not appear. The mortgage from Bailey to Nesbit described Nesbit as administrator, and authorized him, in default of payment of the debt, to sell the land at the west court-house door in the town of Fulton, first giving notice by six written hand-bills, posted in as many public places in said county, twenty days before the sale. On the 24th of March, 1863, Nesbit, in his individual character, conveyed the said land to David Allen, in which deed there was no recital that the advertisement of the sale named the west court-house door as the place where the sale would be made, &c. On the 30th of May, 1863, said D. Allen executed a mortgage, conveying to said Nesbit the land in controversy, together with other lands, to secure certain demands, including the unpaid part of the purchase money for this tract, which said Nesbit had against him, and authorizing said Nesbit, on default made in the payment of said demands, to sell the lands, &c. October 19th, 1874, Nesbit having sold this land under and in pursuance of the terms of said mortgage to the plaintiff, executed a deed conveying to him the said lands. Plaintiff also proved that James Allen, Nesbit's intestate, was in possession of said land from 1842 to 1854. The evidence on the part of defendant tended to prove that James G. Allen, the original defendant herein, went into possession of the land in controversy in the spring of 1863 ; that he took possession under some arrangement betwixt himself and David Allen. One witness testified that James G. Allen paid said David Allen $1,500 for the land. Mrs. Jones, mother-in-law of James G. Allen, testified that she heard him say that the

land had been deeded to his wife and children. Brown, also a witness for defendant, testified that James G. Allen stated to him that Nesbit had a lien on the land for about $900, but that he, Allen, was entitled to a credit of $400; that, in 1873, he had a conversation with said Allen in relation to the deed of trust from David Allen to Nesbit, and at request of said James G. Allen, witness went to see Nesbit to learn what sum was due on the mortgage. James G. Allen told witness he had paid Nesbit $400, which was not credited by Nesbit on the note, and said that he was to pay the note that Nesbit held against David, secured by the deed of trust executed to Nesbit by David Allen. Mrs. Allen, one of the defendants, testified that David Allen told her he had deeded the land to her and her children. In rebuttal, Nesbit testified that he and James G. Allen often talked about the liens on the land, and that he paid said Nesbit $450 on the debt; that witness drew an instrument of writing by which David Allen bound himself to make a deed, conveying the said land to the wife and children of James G. Allen when James should pay off the mortgage. These conversations and transactions occurred while James G. Allen was in possession of the land. Defendants recalled Mrs. Mary Allen, and asked her to state to whom the $450 belonged, which was paid by James G. Allen to Nesbit, in what manner and on what indebtedness, and for whom it was paid. Plaintiff objected and the court sustained the objection.

The principal questions are: First, as to the effect of the several conveyances relied upon by plaintiff; and, second, in regard to the statute of limitations relied upon by defendant. There can be no question that the patent from the government vested the title to the land in Scott & Rule. The deed from Rule and wife, and Valois, as attorney in fact of Scott, passed the title of Scott & Rule to Jesse Lindell and George Collier. The land was treated by Scott & Rule as partnership property. It was conveyed by Scott & Rule

1. PARTNERSHIP REAL ESTATE: presumption from lapse of time.

to Lindell & Collier to secure the partnership indebtedness of Scott & Rule.   True, that conveyance was not executed by Scott, in person, but by his attorney in fact, within three months after the execution of the power of attorney, and no complaint having been made by Scott or any one representing him, it is but reasonable, after the lapse of over forty-five years, to presume his acquiescence in the treatment of the land as partnership property.   The deed from Lindell & Collier passed the title of said land to James Allen.

In December, 1854, letters of administration on his estate, as we have seen, were granted to Nesbit, who pre-
2. ADMINISTRA- sented his petition to the county court of
TOR'S SALE OF
REAL ESTATE: af- Callaway county, asking for an order to sell
fidavit to petition
for sale.          said land for payment of the debts of said estate.   No objection to these proceedings is urged, except as to the sufficiency of the affidavit, and that question was decided expressly by this court in *Rugle v. Webster*, 55 Mo. 246.   The court there said : " Although the proceeding may have been irregular, and the affidavits not made in literal compliance with the law, yet these are not such jurisdictional facts as would render them wholly void."

The order of sale required the administrator to sell on twelve months' credit, and take a bond with security for
3. ——: approv- the purchase money.   The purchaser had
al at adjourned
term.          failed to give such bond when the report was made, and although that fact was stated in the report, the court approved the sale, at an adjourned term of the November term of said court next ensuing the sale.   Appellants contend that the report should have been made at the regular November term and not at the adjourned term, and that this was such an irregularity as vitiated the sale, and rely upon *Speck v. Wohlien*, 22 Mo. 310 ; *Castleman v. Relfe*, 50 Mo. 583 ; *State to use, &c. v. Towl et al.*, 48 Mo. 149. These cases to that extent, have been several times expressly overruled by this court, see *Sims v. Gray*, 66 Mo. 613, and cases there cited.

Wilkerson v. Allen.

In November, 1861, Nesbit made a final settlement as administrator of said estate, which showed the estate indebted to him in the sum of $812.56, but there was neither a resignation of, nor an order discharging him from his said trust, and on the 7th of August, 1862, he executed a deed conveying to said Bailey, the land. The making of the final settlement did not deprive the administrator of the power to make the deed. *McVey v. McVey*, 51 Mo. 406; *Rugle v. Webster*, 55 Mo. 247. In *Garner v. Tucker*, 61 Mo. 431, the order approving the sale was made after the final settlement. The court said "the approval of the sale is said to be the crowning act; without the approval, there is no sale. What authority has the court to sell the property of an intestate after final settlement, and what authority has the administrator to ask it to be sold?" Here the sale and approval were made before the final settlement.

Nor do we think that the failure of the administrator to take a bond, with security, for the purchase money, rendered the deed made by him a nullity. The fact was stated in the report of the sale to the court which had jurisdiction of the cause, and it was approved. It was judicially determined by the court that the sale be approved and the deed executed. While the purchaser at the administrator's sale might hold the land subject to a lien for the unpaid purchase money, in favor of the estate or its creditors, yet the deed passed the title, and strangers who have no equity, cannot avoid the deed because it was made before the payment of the purchase money. The administrator and his securities would also be liable to the estate for the purchase money. The administrator assumed the debt when he conveyed the land without receiving from the purchaser the amount of his bid. The proceedings were regular. The order of sale, the sale, report of sale, approval of same, and execution of the deed are certainly sufficient to protect a purchaser from the administrator's vendee.

The mortgage from Bailey to Nesbit described the latter as administrator, and it is contended that he held the
**6. MORTGAGE TO ADMINISTRATOR: deed under the mortgage.** land as administrator, and could not, except as administrator, convey the land. The words " administrator," &c., did not have the effect to pass the title to Nesbit as administrator. He could not hold the lands in that character, and the execution of the deed by him, in his own right and character was proper.

It is also contended that there was no evidence of the proper advertisement of the sale under the Bailey mort-
**7. SALE UNDER A MORTGAGE: proof of notice.** gage, to support the conveyance to D. Allen. The deed did not recite that the sale was advertised to take place at the court-house door, at Fulton, but parol evidence was introduced, and properly, to show that the place of sale was named in the advertisement. Nesbit testified that the hand-bills were lost, but that he was satisfied, from his manner of doing business, that the hand-bills named the court-house door as the place where the sale would be made; that the sale was actually made at the court-house door in the town of Fulton, and while he could not positively swear to it as a fact which he distinctly recollected, he was satisfied it was a fact that it was so advertised. The substance of his testimony clearly was that he was of the impression that the advertisement named the place of sale as required by the deed of trust.

The only remaining question is in regard to the statute of limitations. That defendants and James G. Allen,
**8. MORTGAGE: when possession is not adverse to mortgagee** the original defendant, had possession from the spring of 1863 to the commencement of the suit, was clearly established. It was also proved that James G. Allen entered upon the land in pursuance of a contract made between him and D. Allen. All the evidence tends to establish this fact. Defendant's witness, Brown, testified that James G. Allen told him he had paid $400 to Nesbit on the mortgage debt of D. Allen, and was, by the arrangement between him and D. Allen, to pay off that debt. To the same effect is the testimony of Nes-

bit, and there is no testimony contradicting or tending to contradict it. Neither Mrs. Allen's statement that David Allen told her he had deeded the land to her and her children, nor Mrs. Jones' statement that James told her that the land had been deeded to his wife and children, disproves the evidence of the agreement between James G. Allen and Nesbit and David Allen.

It is contended that the testimony of these witnesses tended to prove the execution of a deed by D. Allen to Mrs. Allen, and that if she and her husband entered in her right, he could not bind her or prevent the operation of the statute of limitations by anything he might say or do. Admitting that the evidence tended to prove the execution of a deed to Mrs. Allen, yet it was made, if made, in pursuance of a contract of purchase by the husband, who paid the money for the land, if any was paid, and by the terms of that agreement, and by anything by the husband done under and in pursuance of the agreement, she was certainly bound.

9. MARRIED WOMAN, WHEN BOUND BY HER HUSBAND'S ACTS.

The refusal of the court to permit Mrs. Allen to testify to whom the $400 belonged which was paid to Nesbit, and how and on what account it ·was paid, was error; but as it could not and should not have produced a different result, even if she had testified that it was not James G. Allen's money, and was paid on a different debt, the judgment will not be reversed for that ruling of the court.

10. PRACTICE IN THE SUPREME COURT.

The instructions given by the court were in harmony with the views herein expressed. · We have not set them out, because numerous and lengthy. In regard to the statute of limitations, the court instructed the jury "that if defendants and their ancestor had been in the uninterrupted and peaceable possession of the premises sued for, under claim of title, for ten years prior to the beginning of this suit, and if such possession was open and notorious, and adverse to the plaintiff and those under whom

he claims, plaintiff cannot recover." The question of adverse possession was fully and fairly presented to the jury in three instructions for defendant, and the jury must have found from the evidence that the Allens entered under an agreement with David Allen and Nesbit, by which James G. Allen assumed to pay to Nesbit the debt secured by the mortgage from D. Allen to Nesbit, and, such being the fact, defendants were not holding adversely to Nesbit or his grantee. The judgment is affirmed. All concur.

AFFIRMED.