ALONZO   W.   ANCELL   et   al.,   Appellants,   v.
SOUTHERN ILLINOIS & MISSOURI BRIDGE
COMPANY et al.

**Division Two, November 23, 1909.***

1.  **HOMESTEAD: Real Estate.** A homestead is real estate within
    the meaning of sections 3504 and 3510, Revised Statutes 1899,
    authorizing the probate court to order the sale of real estate of
    minors for their education or maintenance, or for reinvestment.

2.  ————: **Sale: For Education or Reinvestment: Condemna-
    tion.** The probate court has power to order a sale of the lands
    of minors, including their homestead, for their education, or for
    reinvestment, and they can be taken by a resort to eminent do-
    main. The statutes (Secs. 3504 and 3510, R. S. 1899) do not
    except homestead real estate from sale for such purpose, and
    the courts cannot read such exceptions into them.

3.  **GUARDIAN: Sale of Real Estate: Notice to Minors.** The
    statutes do not require that notice shall be given to the minors
    of the guardian's application to the probate court to sell their
    real estate, whether it be homestead or not. On the contrary,
    the statute expressly says that "there shall be no publication
    to parties in interest before the making of the order" of sale.
    Nor is there need of the appointment of a guardian *ad litem* to
    represent them, since every presumption is indulged that the
    guardian will faithfully guard the interests of the ward, and
    the probate court in a peculiar sense is the guardian and curator
    of minors.

4.  ————: ————: **Filed and Order Made Same Day.** The order
    authorizing the guardian to sell his ward's real estate is not
    void because made the same day the guardian's petition therefor
    was filed in the probate court. At most, a failure to continue
    the case to the next term before making such order is an irreg-
    ularity which does not go to the jurisdiction of the court, and
    therefore does not render the sale void.

5.  ————: ————: **Petition Not Sworn to.** The guardian's sale
    will not be set aside because his petition for the order to sell
    was not sworn to. The probate court had jurisdiction of the
    subject-matter, and the sufficiency of the petition was a question
    addressed to it.

***Note.**—Decided June 29, 1909. Motion for rehearing overruled
July 7, 1909. Motion to transfer to Court in Banc denied November
23, 1909.

Ancell v. Bridge Co.

6. ———: ———: **Appraisement.** A certificate of appraisement filed by the guardian at the time he made a report of the sale is not overthrown by the subsequent testimony of the appraisers that they do not remember to have appraised the land.

7. **EQUITY: Appellate Practice: Deference to Chancellor.** An appellate court will not abdicate its right in an equity cause to weigh the evidence for itself, yet where the evidence is largely oral and the chancellor had exceptional opportunity to see and hear the witnesses, it will defer largely to his findings of fact.

8. ———: ———: ———: **Fraud.** And the same rule of deference to the chancellor, applies on the issue of fraud between the guardian and the purchaser of the land.

9. ———: **Corporate Power to Purchase: By Whom Asserted.** If the guardian's sale was made in all respects according to statutory requirements, and the consideration was adequate and was paid, the minors cannot afterwards be heard to assert a lack of corporate power in the purchaser to purchase and take title to the land.

Appeal from Scott Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*R. G. Ranney* and *John A. Hope* for appellants.

(1) The proceedings in the probate court, resulting in the guardian's sale and deed to defendant bridge company, are void, for the reason that the plaintiffs had a homestead in the land. This involves a construction of certain provisions of chapter 34, R. S. 1899, entitled "Guardians and Curators," in connection with chapter 37, entitled "Homesteads." The statutes are *in pari materia* and should be construed together. Sales v. Paving Co., 166 Mo. 671. The sale involved in this suit was under the provisions of sections 3504 and 3511, R. S. 1899, authorizing the probate court to order "the lease or sale of the real estate" of minors for certain objects or purposes therein mentioned. What is a homestead? Is it an exemption privilege, or is it an estate in land? In many jurisdictions it is

held not to be real estate. Snodgrass v. Copple, 203 Mo. 480. It necessarily follows from the doctrine above stated that the plaintiffs' homestead was not within the term real estate as used in sections 3504 and 3511, supra, and that the probate court was without authority to order the sale of the nine acres, which was a part of that homestead, and that the sale to the bridge company was void. (2) But even if a homestead be held to be an estate in land, the power of probate courts to order the sale of land in which minors have a homestead is considered by the authori- ties to be at least a very doubtful question. We believe this court has never passed on this question except as it is settled by the application of the doctrine an- nounced in Snodgrass v. Copple, supra, to section 3504, supra. Some high authorities are certainly against the exercise of the power. Thompson on Homestead, sec. 551, pp. 466-67 (Ed. 1878); White v. Samuels, 54 Ga. 548; Roberts v. Trammell, 55 Ga. 383; Woerner's Am. Law Guardianship (1897), par. 3, pp. 250, 251; 56 L. R. A. 89. (3) Further reasons in support of our contention that sections 3504 and 3511 should not be construed as empowering probate courts to order the sale of land covered by the homestead rights of minors are as follows: (a) A strict construction of the statute excludes homestead rights from being in- cluded in the power of sale vested by that statute in the probate court; and the statute should be given a strict construction, because it is in derogation of the well-known rule of the common law that the nature of the minor's property must not be changed, either by a guardian out of court, or by the court itself, so as to convert real property into personal or personal prop- erty into real. McPherson on Infants, 278; Elwood v. Northrop, 106 N. Y. 172; Woerner's American Law Guardianship, sec. 70, p. 233 (Ed. 1897); Strouse v. Drennan, 41 Mo. 289. (b) The homestead statute in force on September 12, 1888, when plaintiffs' father

died, provided that "his homestead to the value afore-said shall pass to and vest in his widow and children, and shall continue for their benefit . . . until the youngest child shall attain its majority," and there is a further clause excepting the homestead thus continued from the provisions of the law relating to devise, descent, dower, partition and sale for the payment of debts. R. S. 1889, sec. 5439; Roberts v. Trammell, 55 Ga. 383. (c) The statute relating to sales of real estate by guardians (sections 3504 and 3511) is general; it refers to real estate generally. But the homestead statute deals with a particular subject—the homestead rights of a widow and children in a decedent's land. The universal rule of statutory construction is that when a particular statute deals with a subject of limited character and states a special rule it prevails over more general language of a different import in another statute. Roth v. Gabbert, 123 Mo. 21; State v. Clark, 54 Mo. 35. (d) Such an interpretation of the law gives effect to the purpose of homestead legislation, viz., to conserve family homes, to preserve families, and thereby promote the welfare of society and the State. Wapple's Homestead (1893), sec. 2, p. 3 and sec. 1, ch. 21, pp. 643, 644; Thompson on Homesteads (1878), sec. 1, ch. 1, pp. 1, 3, and sec. 569, p. 475. (e) The homestead statute is beneficial in its operation and is founded in a wise policy and should be liberally construed so as to give full effect to the intention of the Legislature. Vogler v. Montgomery, 54 Mo. 577 and 583; Thompson on Homesteads (1878), sec. 4, p. 5; Mills v. Grant, 36 Vt. 271. (f) According to the settled law in this State, as we understand it, the land in question could not have been partitioned between the widow and children of the deceased parent. Even the fee was not subject to partition during the existence of the homestead of the minors. Did the Legislature intend by section 3504 to absolutely nullify the provision of the homestead law continuing the homestead

during the minority of the children? Did it intend to change the established policy relative to such home-steads? Roher v. Brockhage, 13 Mo. App. 397; Nicholas v. Purcell, 21 Iowa 265; Thompson on Homesteads (1878), sec. 452, p. 394. (g) There is abundant authority on the proposition that a homestead and the fee are not alienable separately from each other. Thompson on Homesteads (1878), sec. 452, p. 394, sec. 551, pp. 466, 467; Roher v. Brockhage, 13 Mo. App. 406; White v. Samuels, 54 Ga. 548; Roberts v. Trammell, 55 Ga. 383. (2) The guardian's sale and deed should be set aside on account of numerous irregularities, both void and voidable, in the sale and proceedings that led up to it. 1. No notice of the guardian's application to the probate court to sell the land was given to or served on the plaintiffs, or either of them, although they, with their mother, resided in Scott county at that time. R. S. 1899, secs. 148, 3505. The sale in this case should not be tested by the ruling in the Pattee case, construing the law of 1855, but it should be tested by the law as found in Revised Statutes 1889, the law in force at the time of this sale, which expressly required the same proceedings as in the case of administration sales, with only one exception, viz., the newspaper publication. The Legislature did not except the provision for personal service on the heirs, and the court should apply the law as the Legislature left it. R. S. 1889, sec. 3505; R. S. 1889, secs. 148 and 149; Valle v. Fleming, 19 Mo. 454; Young v. Downey, 145 Mo. 250; McAllester v. Moye, 30 Miss. 258. 2. The order of sale was made on the same day the guardian filed his petition for the order. According to the administration law, the order directing an administrator to sell lands to pay debts cannot be made at the same term of court at which the petition is filed; the order cannot be made earlier than the next term after the filing of the petition. The petition was not even verified. Whether the failure to swear to the

petition be regarded as a void or merely voidable irregularity, the fact that the court ordered the sale on the same day the petition was filed renders the sale void. R. S. 1899, secs. 3505 and 148; Hutchison v. Shelley, 133 Mo. 412. (3) This is a suit in equity for the direct purpose of cancelling the guardian's deed to the bridge company and the proceedings in the probate court leading up to the deed. It is not a collateral attack. Being a direct attack in equity, irregularities in the proceedings, even though these irregularities be what are termed merely voidable, and whether they appear on the face of the record of the proceedings or by testimony outside of and contradicting the record, can be taken advantage of and will overthrow the sale. 1 Black on Judgments, sec. 288, p. 560; Davison v. Huff, 165 Mo. 561; Robbins v. Boulware, 190 Mo. 33.

*W. H. Miller* for respondents.

If there was a single scintilla of proof which could be developed into an indication of fraud or conspiracy to rob these children, neither the trial court nor counsel for either side have been able to discover it. (2) The law does not contemplate nor does the statute ever require the doing of a useless or absurd act. Minors can only appear in court through their guardian or curator, and the service of a notice on them could serve no useful purpose, no good could come of it, no reason exists as to why it should be done, and if the statute did require it the failure to do so would be but an irregularity and would not render the proceedings void. Pattee v. Thomas, 58 Mo. 163. This case has never been criticised or overruled; it could not be, on principle. Publication is no longer required by the statute. R. S. 1899, sec. 3505. (3) The petition for the sale of the nine acres was filed by the guardian on May 26, 1902, the order of sale was made on the same day, the appointment of appraisers

was made on the same day, and at the August term came the reported sale and the order for the execution of the deed. This report of sale was accompanied by the certificate of the appraisers. The purchase from the mother, about which so much is said, was consummated on the 29th of July. There is nothing in the record as thus depicted which, in the most remote degree, tends to prove or even suggest wrong-doing. The proceedings were entirely regular. The only possible complaint would be a technical one and, at its worst, a slight irregularity in that the petition was filed and the order made at the same term. Henry v. McKerlee, 78 Mo. 416. When the probate court has jurisdiction of a subject-matter, its records and judgments are entitled to all the considerations that are due to the records and judgments of a court of general jurisdiction. State ex rel. v. Holman, 93 Mo. App. 618; Johnson v. Beazley, 65 Mo. 250; Henry v. McKerlee, 78 Mo. 416; Murphy v. DeFrance, 105 Mo. 53; Cox v. Boyce, 152 Mo. 582. Records of probate courts in matters within their jurisdiction import absolute verity. In re Tucker, 74 Mo. App. 334; In re Estate Hersch v. Schnecke, 73 Mo. App. 614; Johnson v. Beazley, 65 Mo. 250; Henry v. McKerlee, 78 Mo. 416; Cambden v. Plain, 91 Mo. 117; Rattman v. Schmuker, 95 Mo. 139; Murphy v. DeFrance, 105 Mo. 53; Macey v. Stark, 116 Mo. 418; State ex rel. v. Bilby, 50 Mo. 162. (4) It is the policy of the law to uphold judicial sales and to look with leniency on minor irregularities which do not prevent a substantial compliance with its formalities, which it is always best to observe. Jones v. Manley, 58 Mo. 565; Moore v. Davis, 85 Mo. 464; State to use v. Jones, 89 Mo. 479. (5) It is contended that, this being the homestead of the minors, there was no authority or power in the probate court to order its sale for any purpose. This assumption or assertion is based upon an erroneous construction of the law. R. S. 1899, secs.

3504 and 3506; Hesche v. Schnecko, 73 Mo. App. 612; State ex rel. v. Schleifforth, 9. Mo. App. 431.

GANTT, P. J.—This is a suit by Alonzo W., Florence A., and Thornton A. Ancell—the last named, a minor child of Thornton Ancell, deceased, suing by his guardian and curator, Thomas M. Williams— to set aside a certain deed made by their former guardian, Samuel Tanner, to 9.1 acres of land particularly described as follows: "Beginning at a point 1030 feet west of the northeast corner of section 4 at the intersection of the south right-of-way line of the Gray's Point Terminal Railway and the west line of the public road lying in the northeast quarter of section 4, township 29, range 14 east, and extending in southwesterly direction along said right of way line 1280 feet, more or less, thence south 310 feet, thence northeasterly parallel to said right of way line 1280 feet to said public road, thence north along said road to the point of beginning, containing 9.1 acres, more or less, in Scott county," to the Southern Illinois and Missouri Bridge Company. And also to set aside all the proceedings in the probate court of said county in relation to the sale of said real estate to the. said Bridge Company and to divest the said Bridge Company of all right and interest and title in said real estate and vest the same in plaintiffs.

The petition states the minority of the plaintiff Thornton Ancell and the appointment of Mr. Williams as his guardian and curator in May, 1903, by the probate court of Cape Girardeau county. It is then alleged that Thornton A. Ancell left surviving him at his death his widow Margaret J. Ancell and the three minor plaintiffs as his only heirs at law; that the widow elected in the manner provided by law to be endowed absolutely of a share of the real estate in lieu of her dower therein and afterwards conveyed her one-fourth share of the real estate above described to the said Bridge Company. It is then alleged that the plaintiffs were

entitled to a homestead in the forty-acre tract of which
said 9.1 acre tract is a part, during their minority, and
in addition thereto they were each entitled to one un-
divided one-fourth thereof in fee simple.   It is
then alleged that on the —— day of November,
1897, the defendant Samuel Tanner, at the request
and instigation of the Gray's Point Terminal
Railway Company, which desired to obtain a right of
way through said land for its railroad, induced the
probate court of Scott county to appoint him, the said
Tanner, guardian and curator of the estate of these
minors, and that thereafter said Tanner, by means of
fraudulent representations, obtained from the said
probate court a fraudulent and pretended order of sale,
in pursuance of which he pretended to sell and convey
———— acres of said real estate to said Gray's Point
Terminal Railroad Company for its said right of way,
and thenceforth, until these plaintiffs selected Thomas
M. Williams as their guardian and curator, said Tan-
ner was constantly scheming and contriving with the
Southern Illinois and Missouri Bridge Company, and
with the railroad companies that own and are inter-
ested in said bridge company, to cheat and defraud
plaintiffs out of their said real estate and vest the title
of the same for a nominal consideration; that in pur-
suance of said fraudulent scheme said Samuel Tanner
on May 26, 1902, at the May term thereof, filed in the
probate court of Scott county a pretended petition for
an order to sell 9.1 acres of said real estate as above
herein described and falsely represented to said court
that there was no personal estate belonging to plain-
tiffs.   That the rents and profits of said lands were
insufficient to pay the charges and expenses necessary
to support and educate them and that it would be to the
interest of plaintiffs to sell said real estate and rein-
vest the proceeds at interest; that on said May 26,
1902, said probate court made and entered its order

directing said Samuel Tanner to sell said real estate at private sale for cash, and thereafter said Samuel Tanner in pursuance of said pretended petition and order of sale sold said real estate to the defendant for the sum of $500.50, and reported said sale to the said probate court on the 25th day of August, 1902, and wrongfully and fraudulently induced said court to approve said sale, in pursuance of which said order and approval, said Samuel Tanner, acting as guardian and curator of plaintiffs, executed and delivered to defendant a deed whereby he undertook to convey said real estate to defendant, which deed the defendant Bridge Company caused to be recorded on September 20, 1902, in book 45, pages 336 and 337 in the office of the recorder of deeds in Scott county. It is then alleged in general terms that the allegations in the petition for the sale of said lands were false and fraudulent, and that plaintiffs were not in need of any funds for support and maintenance or education and that there was no occasion for selling the same at that time. That at that time said land was a most advantageous and profitable investment of plaintiffs' estate and the said 9.1 acres was then and still is of the value of $10,000. Various irregularities are then alleged as to the proceedings in the probate court and a general allegation that the court had no jurisdiction to order the sale of real estate, for the reason that the same was the homestead of the widow and children of said Thornton A. Ancell, deceased.

It is also charged that the defendant Bridge Company had knowledge of all the irregularities and illegalities attending the sale of said land and the false representations made by which the probate court was induced to order and approve said sale. It is then alleged that the defendant Bridge Company had no authority to own, condemn or acquire property in Missouri for the purpose of its terminal yards. That its claim to this property is violative of article five of the

fourteenth amendment of the Constitution of the United States, and contrary to section 21 and section 30 of the Bill of Rights of the Constitution of the United States and the State of Missouri. There is then an offer to return the money received from the defendant Bridge Company and an allegation that the plaintiffs refuse to accept the same from their guardian. To this petition the defendant answered by general denial only. The cause was tried at the October term, 1905, of the circuit court of Scott county, Missouri, and resulted in a judgment dismissing plaintiffs' petition. After an unsuccessful motion for a new trial, the plaintiffs have appealed to this court.

As to the charge of inadequacy of consideration paid for this nine acres by the Bridge Company, the circuit court found as a matter of fact "that the price paid by defendant corporation for said land was a reasonable and fair one, considering the circumstances then existing, and was in excess of the sum fixed by the appraisers, who were duly appointed by the probate court and in the manner provided by law made their report to said court." The court also found that the defendant Bridge Company in pursuance of said purchase expended large sums of money in good faith upon said property and the court further found that there was no fraud or conspiracy entered into by any of said parties or between any parties in any way connected with the sale of said real estate and that the defendant Bridge Company was the owner in fee of the said 9.1 acres of land.

For convenience, the various assignments of error for which the plaintiffs ask a reversal of this judgment will be considered in the order of the brief of their counsel.

I. The first proposition advanced by the plaintiffs is, that the sale of the lands in suit was void because the plaintiffs had a homestead therein. This assignment is double. In the first place, it is insisted

that the land, being the homestead, was not subject to sale under the provisions of sections 3504 and 3510, Revised Statutes 1899, because under this section the probate court was only authorized to order the sale of "real estate." And secondly, that if a homestead should be construed to be real estate or land within the meaning of the statute, then it is insisted that there is no power in the probate court to sell the real estate of infants for reinvestment when the same consists of a homestead.

In support of the first contention, to-wit, that a homestead is not real estate, it is sufficient to say that it is at variance with the statutes and the construction thereof by this court on numerous occasions.

In West v. McMullen, 112 Mo. 405, it was ruled by this court that upon the death of her husband, the homestead vested in the widow for her lifetime with the right of the minor children to occupy and enjoy the same with her until their majority. In that case it was said: "We think the statute vested in the widow and minor children, if any, *an estate* for her life, and during *their minority,* and not a mere right of occupancy. Decisions upon statutes essentially different from ours throw no light upon the question. But our own decisions and those of the Vermont courts and of New Hampshire, under the act of 1868, determine that the homestead is a life estate, the widow may use or rent it out as she sees fit during her life."

In Hufschmidt v. Gross, 112 Mo. l. c. 657, the decision in West v. McMullen was expressly approved and Kaes v. Gross, 92 Mo. 647, was disapproved and overruled. In support of their position the learned counsel cite us to Snodgrass v. Copple, 203 Mo. 480, as holding that a homestead was not real estate, but this is a total misconception of the meaning of that case. Speaking for this court VALLIANT, J., in that case said: "On the trial of the issues involved in this motion the court will begin with the necessary

concession on the part of both parties that the title
to the property is well vested in the defendant. But
the defendant says, if the plaintiff is to have his way
my title will be divested; that brings us to the very
point of the controversy. Defendant's title will not
be divested by the judgment in the case, but the judg-
ment will leave the defendant's property exposed to
the sheriff's levy and the result of that levy with the
sequence may be to divest the defendant of his title.
But that is the indirect not the direct effect of the
judgment.'' There is nothing either in the majority
or dissenting opinion that holds, or was intended to
hold, that a homestead under our laws was not an
estate in land.

This brings us to the second proposition involved
in this first assignment, to-wit, that the probate court
is without jurisdiction to order the sale of lands belong-
ing to minors for the purpose of raising funds for
their education and for reinvestment.

In the discussion of this branch of the case,
learned counsel say that this is at least a doubtful
question and that this court has never passed on it
directly. The argument in brief is that while the stat-
ute, sections 3504 and 3510, Revised Statutes 1899,
provides for the sale of the real estate of minors by
their guardian for support and maintenance and edu-
cation, and in the proper cases for reinvestments, the
homestead statute deals with the particular subject,
the homestead rights of the widow and children in the
land, and that applying a familiar rule of construc-
tion the special statute should prevail over the general
one, and that to hold that a homestead could not be sold
at all for the education, maintenance and support of a
minor or minors would best subserve the purpose of
homestead legislation. On the other hand, it is to be
observed that sections 3504 and 3510 provide that the
probate court, for the proper education, support and
maintenance of minors, according to their means and

for such purposes, may from time to time, when the
money income and personal estate of such minor shall
be insufficient or incapable of such object or purposes,
order the lease or the sale of the real estate of such
minor.   There is an entire absence of any exemption
of homestead estates from the scope of these sections.

Like the learned counsel we have not been able to
find any case in which the present contention has been
made and passed upon by this court.   The nearest ap-
proach to it to which we have been cited is the case of
the matter of the final settlement of the estate of Chris-
tina Hesche, 73 Mo. App. 612.   In that case the Court
of Appeals says:  "At the next term of the probate
court after the sale, to-wit, November term, 1895, the
administrator reported the sale as above set forth.
The report was continued to the next term.   After the
report was filed an examination of the title revealed
the fact that the deceased obtained title to the land
under the will of her deceased husband, and that two
of their children, who were minors, had a homestead
right in the land.   Thereupon the administrator, the
guardian of the minors, and Mrs. Laville agreed upon
the following settlement of the business:   It was agreed
that the value of the homestead right was $502.42; that
Mrs. Laville should pay this amount to the guardian
for her wards and in full satisfaction of their interest
in the land, and that the administrator should receive
and accept from Mrs. Laville the sum of $2,522.58 as
the full amount due the estate on account of the pur-
chase.   This agreement was communicated to the pro-
bate court at its February term, 1896, and received
its approval.   It appears that in order to consum-
mate this arrangement, the probate court made an
order authorizing the guardian of the minors to sell
their interest in the land to Mrs. Laville for the sum
named.   This settlement and adjustment was finally
approved by the probate court."

This action of the probate court met the approval
of the St. Louis Court of Appeals without any sug-
gestion that the probate court had no power to author-
ize the sale   of the homestead estate of the minors.
The reasons underlying the laws which permit the sale
of the lands of minor children for reinvestment and
for their support and education are very different from
those which exempt such lands from sale for the pay-
ment of the debts of their ancestors.   The homestead
statute is a humane and salutary one and has been lib-
erally construed in behalf of those for whom home-
steads were exempted from sale for debt. The probate
courts of this State are the guardians and curators of
minor children. The Legislature evidently had in mind
that it must often happen that minor children should
own a piece of real estate which was not a revenue pro-
ducer, but on the contrary oftentimes an expense,
and yet circumstances might arise that it could be
sold for a good price and the proceeds invested in
property producing good rentals.   On the other hand
it must have occurred to the Legislature that a child
might often be left with a piece of property which
would not furnish revenue enough to educate and main-
tain it and thus the child be compelled to grow up in
ignorance for the want of power in a probate court to
sell or lease the said land for its education, and there-
fore these provisions were made for the sale and leas-
ing of the real estate in such circumstances.   The
Legislature not having made any exception to this
power of the courts to sell the real estate of minors,
the courts cannot import and read such an exemption
into the statute.   And we are of the opinion that this
point is not tenable.   There can be no doubt that this
property could be taken by a resort to eminent domain.

In case of condemnation the infant owner of a
homestead would have the protection of the judgment
of three disinterested commissioners or of a jury,
whereas in the case of a proceeding like this through

the probate court the infant would have the benefit of three disinterested appraisers with. the judgment of a, probate judge back of them to approve or disapprove their estimate of the value. And thus the rights of the infant would be as safely guarded by. a proceeding in probate court as in a, proceeding by eminent domain. But in the absence of any exception or exemption by the Legislature over the general and unrestrained power conferred upon the probate court, we think the courts have no right to import such an exception into the statute, and in our opinion the failure to to place such an exception in the statute is in consonance with the failure of the Legislature to make such an exception.

II.   But plaintiffs insist that even if the probate court had jurisdiction to order the sale of these nine acres, still the guardian's sale and deed should be set aside on account of numerous other irregularities. First, no notice of the guardian's application to the probate court to sell the land was given to or served on the plaintiffs or either of them, although they resided in Scott county with their mother at the time. Counsel seeks under this head to draw distinction between the statute in force in 1855 and our statute of 1899 in regard to the proceedings for the sale of real estate of minors, section 3505, Revised Statutes 1899. This court in Pattee v. Thomas, 58 Mo. 1. c. 172, we think, disposed of this objection.   Judge Napton, speaking for this court, said: "The objection that no notice of the intended application was given as required by the administration law is untenable.   We presume that the Act of '51 never intended to make the administration law any further applicable to guardians than would be consistent with the different positions occupied by administrators and guardians.   To whom and for what purpose could a notice be required in the case of guardians?   It would concern nobody

but the minors, and they are in court already through their guardian, the only channel through which they can communicate with the court. The case of Overton v. Johnson, also, answers the objection of the neglect of the guardian to file an inventory, which is required in applications by administrators to sell real property on account of a deficiency of personal estate. Judge GAMBLE in that case observes: 'It is true that the statute directs ''that when such petition, and such lists and inventories shall be filed, the court shall order that all persons interested in the estate should be notified,'' etc., but the provision is only designed to carry out the direction of the previous section, and does not affect the question of jurisdiction. The jurisdiction is acquired by filing a petition, praying the court to do an act or make an order, which, under the statute, the court is competent to do. Whether the petition is in proper form, or sets forth sufficient facts, or is accompanied with the proper evidence, the court will decide in the exercise of its jurisdiction.' ''

Under the statute of 1851, under which the Pattee case was decided, there was no exception, but the sale was required to be in conformity to the rules and regulations governing sales of real estate of deceased persons, whereas section 3505, Revised Statutes 1899, after making this same general provision, provides, ''Except that there shall be no publication to parties in interest before the making of the order.'' So that while the statute now expressly dispenses with publication to parties in interest, it had already been decided under the Act of 1851, which contained no such exception, that no notice was necessary to the minors of the application by their guardian. The decision of this court in that case has never been, to our knowledge, criticised or questioned. There is no presumption of law in this State that a guardian and curator is so interested personally that in a proceeding by a

223 Sup—15

guardian to sell real estate a guardian *ad litem* should be appointed to represent the minor. On the contrary every presumption is indulged by the law that the guardian and curator will faithfully guard the interest of his wards until the contrary is made to appear.

III. Another defect in the proceedings urged by the plaintiffs is that because the petition was filed and the order of sale was made on the same day, therefore the sale was void. Or if not void, at least cogent evidence of fraud. It appears from the record that the petition for the sale of the nine acres was filed by the guardian, Tanner, on May 26, 1902, and that the order of sale was made on the same day and the appraisers appointed at that time. The report of the sale was made at the next August term and the deed ordered to be executed. This report of sale was accompanied by the certificate of the appraisers. The purchase of the mother's interest was consummated on the 29th of July, 1902. In support of the proposition that the fact that the court ordered the sale on the same day the petition was filed rendered it void, we are referred by learned counsel to Hutchison v. Shelley, 133 Mo. l. c. 412, and to sections 3505 and 148, Revised Statutes 1899. But it is obvious as said by Judge NAPTON in Pattee v. Thomas, that these provisions of the administration law were intended to apply to administrators, and not to the case of a guardian applying for a sale of his ward's land. This whole subject has been so often examined, reviewed and discussed that we can do no better than adopt the language of this court in Henry v. McKerlie, 78 Mo. l. c. 429: "When the sale has been prematurely approved in the probate court, this fact was by the earlier decisions regarded as equivalent to no approval at all. The sale was regarded as absolutely void and passing no title, either legal or equitable. [Wohlien v. Speck, 18 Mo. 563, and a number of cases.] Whatever equity inured to the pur-

chaser depended upon such facts as are described by us in the second conclusion recited by us as applying to void sales. But by the most recent decisions of the Supreme Court this doctrine, which first arose in the case of Speck v. Wohlien, 22 Mo. 310, and which for a long time prevailed in this State, has been overruled; and such sales are now held to be as valid as if the approval had been in the circuit court, on the ground that the same presumptions of validity must be entertained in respect to the judgments and orders of the probate court in matters of the administration of estates, as are accorded to the judgments and orders of the circuit court. [Johnson v. Beazley, 65 Mo. 250; Sims v. Gray, 66 Mo. 614; Wilkerson v. Allen, 67 Mo. 502.] It thus appears that the doctrine of Speck v. Wohlien is a thing of the past, and has given place to a more just and rational doctrine, which cannot fail to have a good effect upon this class of litigation. While the doctrine prevailed that a premature approval in the probate court was no approval at all, the courts, in their efforts to escape the injustice of the doctrine, commenced to hold that the sale might be approved twelve and thirteen years after it had taken place, so as to pass a valid title to the purchaser. [McVey v. McVey, 51 Mo. 406.] The approval of the sale by the court need not necessarily appear by formal entry of an order. It is sufficient if the approval can be gathered from the whole record.''

Inasmuch as the law did not require service of a notice upon these minors of the application for the sale of this land, we hold that a failure to continue the case from the May term to the August term before making the order of sale was at the most an irregularity which did not go to the jurisdiction of the probate court and therefore did not render the sale void.

IV. It is next insisted that this sale should be set aside because the guardian's petition for the order

to sell was not sworn to. But the probate court had jurisdiction of the subject-matter of this application and the question of the sufficiency or insufficiency was one addressed to that court and upon which it was competent to pass; so, in the absence of fraud, its action in approving that petition is not open for review by this court or by the circuit court.

It is next insisted that the land was not appraised. As to this the guardian filed his report of sale and certificate of appraisement showing that Vancient Heiserchier, Casper Miller and Joseph Miller, on the 26th day of May, 1902, appraised this land at forty dollars per acre, and on the trial of this case these appraisers were sworn as witnesses, and when their attention was called to their appraisement their recollection was that at the time they had appraised a twenty-seven acre tract and did not recollect that they had appraised the nine-acre tract. But the fact that they had forgotten that they appraised this nine-acre tract did not in the least overthrow their appraisement. Upon being re-examined they still testified that this land at that time was worth forty dollars per acre for farming purposes, and clearly a sale ought not to be overturned because an appraiser, years afterwards, should forget that he had been called upon to state the value of a piece of land in his immediate neighborhood. Anyone might forget a matter in which he had no more interest than this witness had in the appraisement of that land. He testified that he was selected as an appraiser by Mrs. Rafferty, the mother of these children. He had no occasion to go back to look at the land after having been appointed as an appraiser for the reason that he had lived within a mile and a half of it all of his life, and we are inclined to think that there is little merit in this objection. The evidence shows that Mrs. Rafferty received $90 per acre for her one-fourth interest in this land and her right to possession during her lifetime, and that the children

received $500 for their three-fourths interest in the nine acres subject to their mother's life estate. So the nine acres brought the family a sum largely in excess of the value which the neighbors who lived in the immediate vicinity, and who were themselves land-owners, appraised it to be worth. The probate court approved that sale and upon a rehearing in this case the circuit court expressly approved that sale and found that the land brought its reasonable and fair value under all the circumstances. While this court has often ruled that it would not abdicate its right in a cause in equity to weigh the evidence for itself, yet it has often ruled that in a case like this, where the evidence was largely oral and the circuit judge had exceptional opportunities to see and hear the witnesses and to hear their testimony, this court would defer largely to the judgment of the local court. It would serve no good purpose to repeat in this opinion the testimony of the various witnesses on both sides and it must suffice to say that in our opinion the great weight of the fair and impartial testimony was to the effect that this land was sold by the guardian, Tanner, for a fair and reasonable price. And we think that the learned circuit judge who heard this case, was competent to make all due and proper allowances for the expert testimony as applied to the actual facts of the case. We find nothing in the judgment which calls for a reversal by this court on that question.

And the same observation can be made in regard to the question of fraud. Circumstances which appear to learned counsel for the plaintiffs to indicate a fraudulent purpose on the part of the guardian of these children to sell this land for less than its value to the defendant bridge company have been marshaled and presented with great ability, but on the other hand it appears in evidence that this bridge company having obtained its charter to build its bridge over the Mississippi river and having received the permis-

sion of Congress to construct said bridge, at once took steps to acquire land for its approaches on the Missouri side of the river, and for this purpose it bought lands for its right of way for its tracks and yards from various land-owners in the immediate vicinity of this land, and its engineer having indicated this nine acres as a part of the land which it should acquire, negotiations were had with Mrs. Rafferty, the mother of these plaintiffs, which resulted in her agreeing to take $90 per acre for her interest in the said nine acres, and then the guardian of these minors made his application to the probate court in the usual way for permission to sell the interest of the minors in said land at private sale. It was developed upon the trial that this particular nine acres was not absolutely essential to the bridge company, but that the tracks and yards could have been very easily moved to other lands without taking this land, but the order of sale was made, and the appraisement, and the company purchased the shares of these minors for $500. The company entered in possession of the property, graded it and put it in condition for use as a part of its yards. Three years afterwards and two years after the oldest child had attained his majority, this action was brought and the circuit court found there was no fraud or conspiracy between the parties connected with this sale, and having read this testimony, we are of the opinion that this judgment is well supported by the testimony.

The learned circuit judge was in a far better position to pass upon the question of the adequacy of the consideration paid by the defendant bridge company for this land at the time and under the circumstances than this court can possibly be. His acquaintance with the witnesses and his opportunity to observe their manner of testifying, their interest in the cause, and their connection with the several parties to the suit also made him the proper tribunal to pass upon the

charges of fraud, and in the absence of something to indicate that his judgment was the result of a prejudice or was the exercise of an unwise discretion, this court ought not to set it aside.

Finally it is insisted that the Bridge Company had no corporate power to purchase and take the title to the land in controversy. In regard to this proposition this court has now passed upon it three times and we must decline to again enter upon an investigation of that question. If we are right in affirming the judgment upon the other propositions, which have been advanced and discussed in this opinion, then we are clearly of the opinion that, these plaintiffs having sold this land to the Bridge Company through their lawfully appointed guardian and curator and having received the consideration above named on the merits of the question of the corporate capacity of the defendant bridge company to purchase and hold this land, it does not lie in the mouth of the plaintiffs to assert that want of corporate power. We have carefully gone through all the assignments of error and the record in this case and are of the opinion that the judgment should be, and it is accordingly, affirmed.

*Burgess* and *Fox, JJ.,* concur.