NATIONAL BOARD OF CHRISTIAN WOMEN'S BOARD OF MISSIONS OF THE CHRISTIAN CHURCH OF THE UNITED STATES OF AMERICA, Appellant v. W. W. FRY, Executor of the Estate of MOLLIE R. FRENCH, et al.

Division Two, April 7, 1922.

1. **INSANITY: Inquisition: Trial by Court without Jury.** Under the Act of 1913 (Laws 1913, p. 94), amending Section 474, Revised Statutes 1909, a judgment of the probate court, sitting as a jury, that a person was of unsound mind and incapable of managing her affairs, was valid, where the informant did not demand a jury, and the person whose sanity was being inquired into did not appear or demand a jury, although personally served witn notice.

2. ———: ———: **Judgment Conclusive.** Where the record of the judgment of the probate court in an inquisition of insanity recited that the alleged insane person was duly served in person with notice of the proceeding and that she did not appear, but made default, that the cause was submitted to the court and that the court, having heard the testimony of competent witnesses as to the condition of her mind, did find that she was a person of unsound mind and incapable of managing her affairs and so adjudged and ordered that a guardian of her person and estate be appointed, such judgment was conclusive, there being no evidence

in the. record contradicting the recitation of service and the. court having jurisdiction of the subject-matter and of the person.

3. ———: ———: **Sales of Real Estate for Re-investment.** Under Section 507, Revised Statutes 1909 (Sec. 477, R. S. 1919), sales of real estate of insane persons for re-investment were authorized for like causes and upon the same proceedings as in case of the sale of real estate of minors for that purpose. And as the order of sale and sale in this case were in substantial conformity with Section 437, Revised Statutes 1909 (Sec. 407, R. S. 1919); the sale was valid.

4. ———: ———: ———: **Renewal of Order of Sale.** A sale of real estate of an insane person for reinvestment made by her guardian at the February term, 1917, of the probate court under an order of sale made at the May term, 1914, was valid, where the order of sale was renewed at the February term, 1917, and the property was thereafter appraised and was sold for the appraised value, and such sale was reported to and approved by the probate court at its February term, 1917, and deed pursuant to such sale and order of sale was made to the purchasers.

5. **DEVISE: Revocation: Sale by Guardian for Re-investment: Conversion and Re-Conversion.** Where testatrix made her will whereby she devised certain real estate to plaintiff, and was thereafter duly adjudged of unsound mind and incapable of managing her affairs, and a guardian was appointed of her person and estate, and such real estate was by him duly sold for reinvestment under the orders of. the probate court and the proceeds of such sale were received by him as such guardian but were never reinvested, and thereafter passed into his hands as executor of such will upon probate thereof after the death of the testatrix and remained in his hands as such executor, intact, upon his final settlement as such executor, such sale was not a revocation of such devise, and the purposes of. such sale having failed, such proceeds retained their original character of real estate and passed to plaintiff under the devise.

6. ———: **Certainty.** Where testatrix by her will devised certain real estate to plaintiff and further provided that her executor should have· the right to dispose of said property as he might think best and use the proceeds of the same for home mission work in the United States as plaintiff might think best, the same to be received and handled and used as the W. H. French Memorial Fund for said mission work, such devise was not void for uncertainty produced by contradictory terms, nor was it in the nature of a charitable trust, but, on the contrary, it was a clear and absolute, gift, without reservation or limitation.

7. ———: **Specific: Priority over General Legacies.** Where testatrix by her will made certain specific bequests of personal property, which were delivered to the legatees, and also made certain general legacies and also devised to plaintiff certain real estate which was sold for reinvestment under orders of the probate court, by her guardian appointed upon her adjudication as of unsound mind and incapable of managing her affairs, and the proceeds of which were ·never re-invested but passed into the hands of the executor of her estate, and upon his final settlement as such, it appeared that he had in his hands money in excess of the amount of such proceeds, but not enough to pay· both the general legacies to the legatees and such proceeds to plaintiff, inasmuch as such devise was specific plaintiff was entitled to be paid the full amount of such proceeds before payment of anything upon such general legacies, the executor, however, to be credited with the proportionate amount of state, county and city taxes, if any, paid by him on said proceeds since his final settlement, and the collateral inheritance tax,. if any, thereon.

Appeal from Audrain Circuit Court.—*Hon. Ernest S. Gantt,* Judge.

REVERSED AND REMANDED (*with directions*).

*Hostetter & Haley* and *Clarence A. Barnes* for appellant.

(1)  Title to the real estate did not pass to defendants McPheeters, because such attempted conveyance constituted fraud upon the Probate Court of· Audrain County, the plaintiff, and the decedent.  The guardian of Mollie French, insane ward, could only sell the real estate under order of the Probate Court of Audrain County.  This order could only be obtained upon two theories.  (a)  For the discharge of debts, or the maintenance of the ward.  Sec. 472, R. S. 1919.  (b)  For reinvestment.  Sec. 477, R. S. 1919.  (c)  The order of the probate court to sell the property for reinvestment was not renewed from term to term, nor based upon knowledge of this will soon to be probated.  (2)  If it be claimed that title to the real estate actually vested in McPheeters, then the equitable estate arising from such

conversion of the form of the property from real estate into money vested in plaintiff, and the demurrers of the defendants should have been overruled, and the finding should have been for plaintiff for the full amount of the moneys paid by McPheeters. 3 Pomeroy's Equity Jur. (3 Ed.) pp. 2304-2334, secs. 1159-1178. (3) The judgment, decision, and decree of the court should have granted plaintiff equitable relief. Even though the sale of the real estate was accomplished by the paramount authority of the probate court, and the sale and conversion thereof be either single or double, the plaintiff was entitled to recover, especially so as against defendant Fry. 3 Pomeroy's Equity Jur. (3 Ed.) secs. 1167-1178. (4) By standing on the demurrers, every reasonable inference and intendment that can be drawn from the testimony in favor of plaintiff and against defendants is to be so drawn.

*E. C. Anderson, W. W. Botts, Arthur Bruton, W. W. Fry, Jr., McBaine & Clark and R. D. Rodgers* for respondent.

(1) A will takes effect as of the death of the testator. So, when there was a sale of the property by the guardian and curator of Mrs. French, the devisee (appellant) was neither entitled to the property from the purchaser nor the money received as the purchase price. Wills, 49 Cent. Dig. sec. 1983; Wills, 20 Dec. Dig. sec. 767; I Underhill on Wills, p. 567; I Woerner on Adm., sec. 53, p. 106; 2 Jarman on Wills (6 Ed.) p. 1093; Cozzens v. Jamison, 12 Mo. App. 457; Napton v. Leaton, 71 Mo. 364; Dunlap v. Hart, 274 Mo. 606; Freer v. Freer, 22 Chan. Div. 622; Secs. 480, 512, 553, 777, R. S. 1919; Ametrano v. Downs, 170 N. Y. 388; Pleasant's Appeal, 77 Pa. 356; Johnson v. Osborn, 62 N. C. 59; Frewen v. Frewen, L. R. 10 Ch. App. 610; 33 L. T. N. S. 43. (2) There was no proof whatsoever of fraud by W. W. Fry and Dorothy Norris upon appellant and the Probate Court of Audrain County. Lieber v. Lieber, 239 Mo. 1;

Murphy v. DeFrance, 101 Mo. 157; Payne v. O'Shea, 84 Mo. 129; Hamilton v. McLean, 139 Mo. 678; Nichols v. Stevens, 123 Mo. 96; Moodey v. Peyton, 135 Mo. 489; Railroad v. Merrialles, 182 Mo. 126. (3) The property was not sold, without a renewal of the order of sale. The order was renewed February, 1917. (4) The judgment of the probate court (a) appointing the guardian and curator, and (b) ordering the sale and (c) approving it, are judgments of a court of record and are not open to collateral attack for irregularity. Crow v. Meyersieck, 88 Mo. 411; Harter v. Petty, 266 Mo. 295; Wilson v. Wilson, 255 Mo. 528; Camden v. Plain, 91 Mo. 117; Johnson v. Beasley, 65 Mo. 250; McKenzie v. Donnell, 151 Mo. 431; Conway v. Robinson, 178 S. W. 154. (5) The item of the French will attempting to dispose of this property is void, because (a) its terms are contradictory and meaningless, and (b) the object of the trust is too indefinite to be carried out. Jones v. Jones, 223 Mo. 450; Jones v. Patterson, 271 Mo. 1.

*R. D. Rodgers* and *J. W. Buffington* for respondent *McPheeters.*

(1) The probate court's judgment declaring Mollie R. French to be incapable of managing her affairs, is valid and binding. Sec. 1, p. 94, Sec. 1, p. 95, Laws 1913. (2) The proceedings in the probate court affecting the sale of the premises in question were regular, valid and binding. Robbins v. Boulware, 190 Mo. 33; Sherwood v. Baker, 105 Mo. 472; Bray v. Adams, 114 Mo. 486; Rhodes v. Bell, 190 Mo. 160; Rugle v. Webster, 55 Mo. 246; Rowden v. Brown, 91 Mo. 429; Wilkerson v. Allen, 67 Mo. 508; Blickensderffer v. Henna, 231 Mo. 110; Oldaker v. Spiking, 210 S. W. 62.

HIGBEE, P. J.—This is an action to determine title to certain property owned by Mrs. Mollie R. French, who died testate April 4, 1918, or for alternative relief.

Mrs. French owned a residence property on Love Street in Mexico, Missouri. Her husband, William H. French, had predeceased her, leaving her the property in question, of the value of $7,000 or $8,000, personal estate of the value of about $10,000, and other real estate. On January 9, 1914, Mrs. French, who had no children, executed her will. Item 1 directs the payment of all her debts. The will then contains the following bequests in separate items: 2, to Dorothy R. Norris all her bank stock; 3, $3000 to Mollie R. Prather; 4, $1000 to Thomas R. Rodman; 5, $300 to Margaret Potts McPheeters; 6, her dining room furniture to Lavenia Norris; 7, silverware, chinaware and tableware to Lavenia Norris and Mrs. Charles Prather; 8, large diamond ring and small cameo ring and emerald ring to Dorothy Norris; 9, $1000 to a trustee, net income to be paid annually to Ida Ricketts, at her death principal to be paid to Dorothy Norris; 10, maple set of furniture and mahogany desk to Mrs. Charles Prather. Item 11 reads as follows:

"Item Eleven. I give and bequeath my residence property on which I now reside, situate on Love Street in Mexico, Missouri, and my diamond brooch to the National Board of Christian Women's Board of Missions of the Christian Church of the United States of America. My executor herein shall have the right to dispose of said property as he may think best and use the proceeds of same for Home Mission work in the United States as they, the said Board, may think best, the same to be received and handled and used as the W. H. French Memorial Fund for said mission work."

Item 12 bequeaths the residue of her estate to Dorothy Norris. All the legatees except the plaintiff are joined as co-defendants with W. W. Fry, Executor, and other defendants hereinafter named.

On May 22, 1914, Mr. Fry filed an information in the Probate Court of Audrain County, charging that Mrs. French was a person of unsound mind and incapable of managing her affairs, and praying that an inquiry be had.

On May 26th the court, without the intervention of a jury, held an inquiry and entered of record the following judgment:

"*In re Mollie R. French*. Now at this day, this cause coming on to be heard, it being the matter of inquiry into the condition of mind of Mollie R. French, comes W. W. Fry and witnesses and answer ready for inquiry and the said Mollie R. French, though duly served with notice in person comes not but makes default, and the cause being submitted to the court, and the court having heard the testimony of competent witnesses as to the condition of mind of said Mollie R. French, does find that she is a person of unsound mind and incapable of managing her affairs, and it is so adjudged, and it is ordered that a guardian of her person and estate be appointed."

Thereupon W. W. Fry was appointed to act as such guardian and gave bond in the sum of $10,000, with sureties approved by the court. On July 17, 1914, he presented to the probate court a petition for the sale of a vacant lot on Calhoun Street, alleged to be of the value of $1200, and for a tract on Love Street valued at between $6,000 and $7,000, for reinvestment, on which Mrs. French's dwelling house and outbuildings were situated, which were said to be in bad repair. This second tract embraced nearly all the tract devised to plaintiff by Item 11 of the will. The court, on July 27, 1914, accordingly made an order that the property mentioned be sold by the guardian, at either public or private sale, for the purpose of reinvestment. At the August term, 1914, Mr. Fry reported the sale of the vacant lot to Kate H. Hammond, Mary V. and Tine C. Houston, for the sum of $1200, which was approved and a deed was accordingly made to said purchasers, who were joined as defendants in this action. This lot is not mentioned in the amended petition. The order of sale was renewed at the February term, 1917, at which term, on March 5, 1917, the guardian reported the sale of the other tract on Love Street to James E. and Roy H. McPheeters for the sum of $5,000, which report was approved by the court and

a deed was accordingly made to said purchasers, who were also joined as co-defendants in this action.

The guardian's appraisement included 47 shares of bank stock valued at $6,110 and diamonds and jewelry appraised at $1,000, and all the other specific bequests. His third settlement, made May 14, 1917, included the $5,000 from the sale to the McPheeters. It showed a cash balance in the hands of the guardian of $9,237.50. This does not include the bank stock. The final settlement, approved April 22, 1918, showed a cash balance due the estate of $8,512.24.

On the death of Mrs. French, on April 4, 1918, her will was admitted to probate, and on April 8, 1918, letters testamentary were issued to W. W. Fry, who qualified and entered upon the discharge of his duties as executor. The appraisement filed by him April 13, 1918, shows cash received from Fry as guardian, $7,309.74; note secured by deed of trust, $1262.50; 47 shares of bank stock, $7,500; and other property totaling $17,974.24. The first annual settlement as executor, made November 16, 1918, shows the distribution of the bank stock, diamonds and other legacies of specific personal property to legatees of the value of $9,402, leaving a balance of notes and money on hand of $8,572.24. The final settlement of the executor, made August 23, 1919, showed a balance due the estate of $6,377.56. The $5,000 received from the McPheeters for the sale of the lot was never reinvested, but remained in the hands of the executor and was accounted for by him in his final settlement.

The plaintiff is an Indiana corporation organized, as said in respondent's statement, for the purpose of carrying on the missionary work of the Christian Church. The amended petition, which will be called the petition, avers the execution of the will, the death of Mrs. French, the probate of the will, the issue of letters testamentary, recites the provisions of the will, the filing of the information charging that Mrs. French was of unsound mind; that the probate court, without notice to her and without the intervention of a jury, found her to be of

unsound mind, and appointed W. W. Fry, her guardian; that he gave bond and qualified as such; that said court had no jurisdiction in the premises; the filing of the petition and order for the sale of her residence property for reinvestment, being part of the property described in Item 11 of the will and the sale thereof, without a renewal of the order of sale, to the McPheeters at less than its fair value for the sum of $5,000; that Mrs. French was possessed of a large amount of personal property in addition to her residence property; that she was an active member of the Christian Church at Mexico, Missouri, and desired that her husband's memory be memorialized in the manner designated in will; that the finding of the court that Mrs. French was of unsound mind, without the intervention of a jury, was a nullity and void, and in contravention of certain specified clauses of our State and Federal Constitutions; that she had no notice of said proceedings; that the order for the sale of her property was without jurisdiction, null and void and improperly and improvidently made; that the attempted sale of said property was a fraud upon the plaintiff in that it deprived plaintiff thereof and the cash for the sale thereof, and the sale thereof was a fraud upon Mrs. French, and was procured and obtained by the defendants Fry and Norris in furtherance of their desire and purpose to obtain said moneys for said Norris and to defeat the plaintiff's right thereto and the will of said Mollie R. French; that said order of sale, the sale and conveyance of said property to the McPheeters and the statutes under which said orders were obtained are null and void, because said orders and proceedings thereunder deprived said Mollie R. French and this plaintiff of their property without due process of law and denied them and each of them the equal protection of the law, contrary to certain specified clauses of the State and Federal Constitutions; that plaintiff is entitled to and is the owner of said real estate, and that defendants claim some title, interest and estate therein, or that it is entitled to have paid to it the fair cash value of said real estate so

sold and conveyed, and that the same be paid to it by defendant Fry, and if there are not sufficient funds in said estate to pay same that each of the defendants should contribute a pro-rata part of their respective bequests or of the fair cash value thereof, to the plaintiff. The petition concludes by praying the court to determine the right, title, interest and estate of the plaintiff in and to said lands and to declare the same to be one in fee in plaintiff, or, that the value thereof be paid to plaintiff out of the estate of said deceased, and if necessary that the said defendants contribute their pro-rata thereto, and for general relief.

The answers of the several defendants admit the ownership of the property in question by Mrs. French; that she died testate; that the will as pleaded was admitted to probate; the appointment of defendant Fry as executor; the order of the probate court finding Mrs. French to be of unsound mind; the appointment of Mr. Fry as her guardian; the order for the sale of her residence property and the sale thereof for reinvestment after due appraisal thereof; the approval of the sale and the execution of a deed conveying same to the McPheeters, and a denial of all other allegations.

The court found the issues for the McPheeters, decreeing title to them, and dismissed the bill as to the other defendants.

The appellant, in its assignment of errors, insists that the sale of the land was void; that the court erred in entering a decree vesting the title to the land in the McPheeters and dismissing the bill as to the other defendants, and that the court erred in not awarding to plaintiff the fund realized from the sale of the land specifically devised to plaintiff.

I. We think that the appellant, in contending that the finding of the probate court in the inquisition of insanity is void because the issue was not submitted to a jury, has overlooked the amendment (Laws 1913, p. 94) to Section 474, Revised Statutes 1909. That section

was amended by adding a proviso thereto:
"that if neither the party giving the information in writing nor the party whose sanity is being inquired into, call for or demand a jury, then the facts may be inquired into by the court sitting as a jury." A number of constitutional questions were raised in appellant's petition, but the question of whether or not a person of unsound mind can waive a trial by jury as provided by this amendment, or whether the plaintiff can raise it, is not presented by the petition. We shall not go into these questions until they are properly before us for consideration.

*Lunacy Inquiry: By Court Without Jury.*

The judgment recites that Mrs. French was duly served with notice of the proceeding, that she did not appear and that neither party demanded a jury. There is no evidence in the record contradicting the recitation of service. It is obvious, therefore, that the court had jurisdiction of the person and of the subject-matter, and that its judgment is conclusive. There was no evidence of any fraud in the procurement of the sale.

We find no jurisdictional infirmity in the proceedings resulting in the sale of Mrs. French's property to the McPheeters. Section 507, Revised Statutes 1909 (Sec. 477, R. S. 1919), authorizes the sale of the real estate of an insane person for reinvestment for like causes and upon the same proceedings as in case of the sale of real estate of minors for that purpose. An examination of the record shows that the order of sale and the sale were in substantial conformity with Section 437, Revised Statutes 1909 (Sec. 407, R. S. 1919), with the exception that the guardian was not required to give bond to account for the proceeds of the sale. The statute seems to be mandatory in this respect, but as the appellant has not attacked the sale on this ground, it need not be considered.

II. The statute does not require that notice should be given of the application for the order of sale, nor that the petition therefor be verified. [Ancell v. Southern

Ill. & Mo. Bridge Co., 223 Mo. 209 (5).] The order of sale was made at the May term, 1914. The sale was made at the February term, 1917.

**Sale of Lands: Order: Renewal.**

It is insisted that the order of sale, not having been renewed at the intervening terms, lost its force and that the sale was a nullity. The record, however, shows that the order was renewed at the February term, 1917. The record also shows that the property was thereafter appraised at the value of $5000, sold for that sum, and the report of the sale approved on March 5, 1917, during the February term of the probate court, and that a deed pursuant to the sale and the order of sale was executed to the purchasers. The court had jurisdiction in the premises, the sale was properly ordered and the report approved by the court.

In Rhodes v. Bell, 230 Mo. 138, at page 160, GANTT, J., said: "Counsel in support of his contention that adjournment of the sale was fatal to the subsequent selling thereof, cites a number of cases in partition, but we have been unable to find any case in which an administrator's sale was held void because not made at a particular term. The statute does not require any such order and the order in this case does not specify any particular term at which the sale should be made. The controlling provision on this point is that the administrator shall report at the next term after he makes a sale, his proceedings in the premises, and this he did. [Camden v. Plain, 91 Mo. 117; Stowe v. Banks, 123 Mo. 672.]. In partition sales, it is expressly provided, or was at the time of this sale, that they should be conducted as sales under execution, which are returnable to the next term of the court, and it was specifically provided that if the sale was not made the order must be renewed. [G. S. 1865, p. 152, sec. 32.]

"Finally, this sale was properly ordered by the probate court and approved and all irregularities occurring in the conduct thereof after the probate court had acquired jurisdiction and had ordered land sold for the purpose of paying the debts of Jesse B. Liggitt, were cured by the approval of the sale by the probate court."

The judgment of the trial court vesting the title to the premises in controversy in fee in the purchasers at the guardian's sale is therefore affirmed.

III. The respondents contend that Mrs. French's will became effective at her death; hence the sale of the property in question during her lifetime, operated as a revocation of the devise to 'the extent of the estate conveyed.

Sale of Devised Lands: Money to Devisee.

It is true that a will, being ambulatory, cannot take effect before, and speaks from, the testator's death (2 Woerner's Am. Law of Administration, sec. 419), and a conveyance of real estate after a devise thereof operates as a revocation thereof *pro tanto*. [Napton v. Leaton, 71 Mo. 358, 365; Dunlap v. Hart, 274 Mo. 600, 606.] In 1 Woerner's Am. Law of Administration, sec. 53, the rule is stated that where the estate devised is contracted to be conveyed and the purchase money remains unpaid in whole or in part, it goes to the personal representative, and not to the devisee, because, under the doctrine of equitable conversion, the purchaser is regarded as a trustee of the purchase money for the vendor. The learned author, however, states that in this latter respect provision has been made in many of the American states that the purchase money shall go to the devisee. Such is our statute. [Sec. 511, R. S. 1919.]

This property, however, was not sold by Mrs. French. It was not sold by the guardian for her support nor to pay her debts. It was sold for reinvestment, and the purchase money having been taken over by Mr. Fry as executor on his final settlement as guardian, remains intact in his hands. If this land had been sold to pay debts or for the support of the testatrix, the sale would have operated as a conversion only to the extent and for the purpose for which it was authorized, and any surplus remaining after such object had been effectuated would continue in its original character of realty. [13 C. J. 876, sec. 55.] If the fund had been re-

invested in other property, that would have operated as a reconversion, and there could be no doubt that it would pass under the devise. "Reconversion also results from the failure of the purpose of the conversion; for if that purpose is or becomes impossible, unlawful or sometimes inexpedient, so that it cannot or ought not to take place, the fiction, which is a favor of the law, fails with the failure of its reason. [Underhill on Wills, sec. 715 et seq.]" [DeLashmutt v. Teetor, 261 Mo. 412, 437; 13 C. J. 885, sec. 80.] Here the purpose of the conversion wholly failed; the fund in the hands of the executor retains its original character and passes to the plaintiff under the devise. [13 C. J. 873.]

IV. It is contended by the respondents, except W. W. Fry, the executor, that Item 11 of the will, devising the property to the plaintiff, is void because of uncertainty produced by contradictory terms. That contention is not found in any of the answers filed by the several respondents and might therefore be dismissed from further consideration. The case must be tried on appeal on the same theory on which it was tried in the lower court.

*Uncertainty in Devise.*

Item 11 devises the residence property to plaintiff, not upon a trust, but absolutely and without reservation or limitation. It then provides that the executor may dispose of the property as he may think best and use the proceeds for Home Mission work in the United States as they, the said Board (the plaintiff), may think best. In other words, if the executor should convert the property into money, he is required to use it under and in accordance with the directions of the plaintiff. The devise to the plaintiff is not in the nature of a charitable trust. It is a clear gift. There are no words in the devise to raise or create a trust; hence there is no trust declared. [Bispham on Eq., sec. 65.] If the devise created a charitable trust, its object and purpose would have to be clear, definite and certain. In such case, the words of creation must announce a definite subject and a cer-

tain object and the terms of the trust must be sufficiently declared. [Jones v. Patterson, 271 Mo. 1. c. syl. 1.] But this well recognized doctrine has no application, because the devise does not undertake to create a trust. Under no conceivable circumstances could a court be called upon to administer this fund any more than if the devise had been to John Doe.

V. The will made certain specific bequests of personal property; bank stock to Dorothy Norris; furniture, chinaware, rings, etc., to other legatees. It appears that these specific bequests have been delivered to the legatees named in the will. There are general legacies, $3,000 to Mollie R. Prather, $1,000 to Rodman, $300 to

Specific Devise:
Preference: Scaling
General Legacies.

Mrs. McPheeters, etc. The final settlement of the executor shows a balance in his hands of $6,377.55, after the payment of all costs of administration. This sum is insufficient to pay the general legacies and the fund of $5,000 to the plaintiff. All devises of real estate are in their nature specific. In 2 Woerner's Am. Law of Administration (2 Ed.) sec. 452, p. 1074, the order of payment is thus stated:

"It is also presumed that, by singling out a specific article by way of a specific bequest, the testator intends that the legatee shall take in preference to those legatees whose bequests are not specifically pointed out; hence the rule is, that specific legacies do not abate, except in favor of such legacies as were given for a valuable consideration, or among themselves. It has been mentioned, that all devises of real estate are in their nature specific; and the question is therefore of frequent occurrence, whether devises have preference over specific legacies. It is now generally held, that, other assets failing so that it becomes necessary to resort to specific legacies for the payment of debts, these abate ratably with specific devises. General legacies do not become specific by reason of being given for any particular purpose or object, to accomplish which the testator directs

them to be applied; hence such legacies are not exempt from abatement, although they be to a wife or child, or for a charitable purpose; unless they be for the maintenance and support of such as stand in near relation to the testator, dependent upon his bounty, and otherwise unprovided for.''

The plaintiff is therefore entitled to payment of the fund of $5,000 in the hands of the executor in preference to the payment of the general legacies.

The judgment is therefore reversed with directions to the trial court to enter judgment for the plaintiff against the executor, W. W. Fry, for the sum of $5,000 and for costs. All concur.

## ON MOTION FOR REHEARING.

HIGBEE, P. J.—It is suggested that since the executor made his final settlement he has paid state, county and city taxes on the funds in his hands and that he will be required to pay the taxes for the present year and the collateral inheritance tax thereon. He should have credit therefor. The motions for rehearing are overruled, the opinion is modified and the judgment reversed and the cause remanded with directions to the trial court to take an accounting of the proportionate amount of state, county and city taxes, if any, that have been paid by the executor on the said fund of $5,000 since the date of his said final settlement, including taxes for the present year and the collateral inheritance tax, if any, and said trial court shall enter judgment against said executor for the sum of $5,000 and costs, less the credit to which said court finds him entitled.