CURETON, C. J. The opinion of the Commission of Appeals is adopted, and the mandamus refused.

---

**RUSSELL et al. v. ADAMS et al.**
(No. 817–4851.)

Commission of Appeals of Texas, Section B.
Nov. 23, 1927.

1. Wills ⬛⟶731—Under devise of land to be set apart, devisee need not pay debt to general estate before he can receive such land.

Under devise of 300 acres of land to be set apart "out of my lands not herein specially bequeathed" for life, with remainder in fee to life tenant's children, life tenant's son is entitled to his share of such land, notwithstanding that he owed deceased's estate a large note, since specific devisee of realty is not required to pay debt to general estate before receiving specific devise.

2. Wills ⬛⟶751—Devise of 300 acres out of land "not herein specially bequeathed" for life, with remainder in fee, held "specific devise."

Devise of 300 acres of land to be set apart "out of my lands not herein specially bequeathed" for life, with remainder in fee to life tenant's children, *held* specific, and not general.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Specific Devise.]

3. Wills ⬛⟶751—Devise of land, to be "specific," need not definitely locate such land.

It is not necessary, in order to constitute a devise of land a specific one, to definitely locate such land by metes and bounds or other identifying description.

4. Wills ⬛⟶488—Testator's intention, if doubtful from consideration of will itself, may be shown by evidence of outside circumstances.

Where will, considered from its four corners only, leaves intention of testator of doubtful construction, outside circumstances are admissible in evidence to show such intention.

5. Appeal and error ⬛⟶1010(1)—Findings of lower court as to testator's intention held binding, if supported by any evidence.

Where outside circumstances are admitted to show testator's intention, such intention being doubtful from consideration of will alone, findings of lower court are binding, if there is any evidence in support thereof.

6. Wills ⬛⟶439—Testator's intention controls in construing will.

Intention of testator is of controlling effect in construction of will.

7. Wills ⬛⟶731—Debt owing general estate is not charge against specific devise, in absence of express provision of will or some necessary implication.

Debt owing general estate will not be a charge against a specific devise, unless it so appears from an express provision of will, or from some necessary implication, so that, where will is silent, such debt will not be charge on the devise.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by Fannie M. Adams and others against John J. Russell, executor of the will of George W. Bowman, deceased, and others. Judgment for plaintiffs was affirmed (293 S. W. 264), and John J. Russell, executor, and another bring error. Affirmed.

E. W. Merritt and Merritt & Leddy, all of McKinney, for plaintiff in error Russell.

Howell Ward, of Houston, and Ward & Beverley, of Corpus Christi, for plaintiff in error Fitzgerald.

John Doyle, Truett & Neathery, and H. L. Davis, all of McKinney, G. P. Webb, of Sherman, and H. Grady Chandler, of Austin, for defendants in error.

---

POWELL, P. J. This case is fully stated by the Court of Civil Appeals. See 293 S. W. 264. That court affirmed the judgment of the district court. We are of the view that the judgments of both courts should be affirmed. Since that is true, we shall not lengthen this opinion by restating the case, except so far as is necessary to clearly present the one issue which we wish to discuss. That issue arises over the proper construction of the will of George W. Bowman, the relevant portions of which read as follows:

### "Item 2nd.

"It is my desire that my executor shall pay all my just debts from my personal property as soon after my death as is practicable.

### "Item 3rd.

"It is my desire that at my death my beloved wife, Brina E. Bowman shall take, have and hold in absolute fee simple all the following lands. Our homestead in Plano, Texas, together with all the land belonging thereto consisting of about 7¼ acres of land. Also the Weaver land consisting of about 303 acres of land being the land bought by me from Col. W. M. Weaver. Also 100 acres to be cut off the north side of the land known as the old home place and now occupied by Jim Loveless and upon which he now lives.

### "Item 4th.

"At my death it is my desire and I will and bequeath to my beloved brother J. H. Bowman to have, hold, use, occupy and enjoy during his natural life the following lands to-wit: 300 acres of land to be set apart to him out of my lands not herein specially bequeathed. It is further my desire that should my beloved brother J. H. Bowman die before I do, or in case he survives me, then at his death, that the lands herein bequeathed to him for life shall vest absolutely in fee simple in his three children Florie Wall, J. H. Bowman, Jr., and Fannie May Adams, share and share alike, and it is further my desire that should either of said named children die before I do, or before their father J. H. Bowman and leave surviving them a child or children or their descendants that such child's share shall descend and vest in them according to the law of descent and distribution but in case such deceased child shall have no surviving child or children or their descendants then it is my desire that the survivors of J. H. Bowman's children shall take such child's share to be equally divided between them.

### "Item 5th.

"It is further my desire that at my death of the lands and premises not herein specifically bequeathed that 305 acres of land be set apart, and such lands be turned over to J. J. Russell as trustee for his children in the following proportions: 105 acres to Georgia Edna Russell, 100 acres to Julia Russell, 100 acres to John Russell, Jr. It being my desire that such lands shall vest absolutely in fee simple in said children but to be held by J. J. Russell in trust until the youngest of said children John Russell, Jr., shall become 21 years of age when same shall be equally divided between them.

### "Item 6th.

"It is my desire that at my death and out of lands not herein specially bequeathed that 325 acres be set apart and be divided among the children of Mary and Bill Loveless as follows: 75 acres to John Loveless, 75 acres to Will Loveless, 75 acres to George Loveless, 100 acres to Jim Loveless which 100 acres I desire to be cut off the south side of the place upon— Jim Loveless now lives; and said lands I give to them in absolute fee simple.

### "Item 7th.

"It is further my desire, that at my death, after all my just debts are paid, that all the balance of my personal property, consisting of notes, accounts, money, bank stock, interurban stock, including all personal effects shall be divided into five (5) equal parts which I will and bequeath as follows: One part to Brina E. Bowman my beloved wife. One part or share to the children of J. J. Russell; to-wit: Georgia Edna Russell, Julia Russell and John Russell to be equally divided between them. One part or share to the children of Mary and Bill Loveless to-wit: John Loveless, Will Loveless, George Loveless, Jim Loveless to be equally divided between them. One part or share to the children of my brother J. H. Bowman to-wit: Florie Wall, J. H. Bowman, Jr. and Fannie May Adams to be equally divided between them, and one part or share to Edna May Dilley Bowman in the event that she shall not have married prior to my death, but in the event she shall marry prior to my death, then it is my desire she take nothing under this will and that the share herein bequeathed her shall be divided into four (4) equal parts and be given the other legatees under this item in proportion as above set forth. All personal property of every kind is intended to be included in this item.

### "Item 8th.

"It is my desire that all the balance of my real estate and lands left after carrying out the bequests and legacies herein above set out shall be divided into (4) four equal shares. One share I give in fee simple to my beloved wife Brina E. Bowman. One share I give absolutely in fee simple to Georgia Edna Russell, Julia Russell and John Russell, Jr., to be equally divided between them. One share I give absolutely in fee simple to Florie Wall, J. H. Bowman, Jr., and Fannie May Adams to be equally divided between them. One share I give absolutely in fee simple to the children of Mary and Bill Loveless, to-wit: John Loveless, Will Loveless, George Loveless, and Jim Loveless to be equally divided between them."

The first assignment of error on behalf of the executor of this estate reads as follows:

"The Court of Civil Appeals erred in overruling and in not sustaining plaintiffs in error's first assignment of error, which is as follows:

"The court erred in rendering this judgment in holding that J. J. Russell, executor of the estate of G. W. Bowman, deceased, did not have the right to retain in his hands that part of the real estate devised to J. H. Bowman, Jr., to pay the indebtedness due said estate by the said J. H. Bowman, Jr., because:

"(a) The undisputed proof shows that the

said J. H. Bowman, Jr., was and is indebted to said estate in a sum largely in excess of the value of the interest in said estate devised to J. H. Bowman, Jr.

"(b) Under the law and in equity the executor of an estate is entitled to collect the indebtedness due by one of the devisees out of the proceeds of said devisee's interest in said estate."

[1] The testator (item 4 of the will) left a life estate in 300 acres of his land to his brother, with the provision that upon the latter's death the land should go to the three children of said brother, share and share alike. This suit arose over an effort on the part of the executor to deprive the son of the testator's brother of his interest of 100 acres in the 300 acres because said son owed the estate of his uncle a large note. The question for determination is whether or not, under this will, the executor can do so. Was this nephew of the testator entitled to keep his 100 acres of this land described in item 4 of the will, although he owed a note to the estate which was a part of the personal property of the estate disposed of in item 7 of the will?

The lower courts have answered this question in the affirmative. The Court of Civil Appeals, beginning on page 10, and ending on page 13 of its opinion accompanying this record, gives its reasons for such holding. We think that court has correctly decided this issue, and we many not be able to add much, if any, light to its reasoning.

The Supreme Court granted a writ of error upon this point, and cited in that connection the case of Oxsheer v. Nave, 90 Tex. 568, 40 S. W. 7, 37 L. R. A. 98. After carefully examining that great opinion by Chief Justice Gaines, we do not think it conflicts with the holding of the Court of Civil Appeals in the instant case. In the Nave Case, the question there involved, and which was answered in the affirmative, was thus stated:

"Or, stating the question in general terms, in the partition of an estate, when a creditor of one of the heirs shown to be insolvent has obtained a judgment lien on said heir's interest in the real property belonging to said estate, and said insolvent heir is indebted to the estate—not for property received as an advancement, but in like manner as other debtors—will the right of the other distributees, as between them and said insolvent distributee, to offset said indebtedness against his interest in the community, be extended to and apply as against the judgment lien creditor, who has bought the interest of said insolvent distributee under a sale made by virtue of an execution issued on his judgment?"

The Nave Case simply holds that an heir to a part of an estate, *real* and *personal*, of an intestate, can be forced to pay his debt to that estate before receiving his part of such estate. In the Nave Case there was no question of any *specific devise* involved, nor of the *intention* of the *intestate* in that connec-

tion. In deciding the case, Judge Gaines quotes at length from the English case of In re Akerman, 3 Law Rep. [1891] Chancery Division, p. 212. And, after the long quotation, he commends that opinion in these words:

"This clear and able exposition, in our opinion, announces the true doctrine and leaves little to be said. We think it decisive of the question certified."

In view of this reference to the Akerman Case, it becomes interesting to see what that learned English judge thought of the situation which we have in the case at bar. He clearly distinguishes the rules applying to various situations in this language:

"The questions which have been argued, and which I am now called upon to decide, directly affect the testator's sons, Henry, William, and James. They also affect George, indirectly, because if Henry, William, and James, or any one or more of them have to contribute to the testator's estate by reason of their being debtors to it, George would thereby have a larger fund out of which to take his distributive share. The other son, Edward, who is also interested under the will, both in respect of property specifically given to him, and in respect of the share of residue of which he is tenant for life, has become bankrupt 'and obtained his discharge; and it has not been attempted to argue that the debt owing from him, which might otherwise have existed at the time of the testator's death, can now be treated as subsisting, and I therefore leave him entirely out of consideration.

"Henry, William, and James, all take as specific devisees or legatees under the will, and it has been suggested rather than argued, that they cannot take the properties specifically given to them without first making good what they owe (if they owe anything) to the testator's estate. *A specific devise or bequest is a thing taken apart, and given directly to the devisee or legatee. It is extracted from the testator's estate before the residue is ascertained, and under no circumstances, so long as the specific gift takes effect, can the property so given form part of the residue.* (Italics ours.)

"On the other hand, a debt due to the estate of a testator is part of the residue. It has to be paid in whole or in part, in whole, if it can be recovered, in order that the residue may be constituted, and there is therefore a clear distinction between a specific legacy and a residuary legacy so far as concerns a debt due from the legatee to the estate. *No case has been cited to show, and it seems to me to be contrary to principle to hold, that there can be a right of retainer in respect of a debt owing from a specific legatee to the estate of the testator.* (Italics ours.)

"As regards the residuary personal estate, apart from the argument that there is no debt at all owing to the estate, there has not been any substantial contention that the debtors must not make good their debts before they can take any part of that residue. If the case falls within the ordinary rule that a debtor cannot claim a distributive share of the residue without making good what he owes to that residue, then it is not argued that this case can for any reason be treated otherwise than as that rule in-

dicates. But the difficulty is this. The residuary gift is not confined to residuary personal estate, but comprises real estate also. There is a general residuary gift—a devise and bequest of the real and personal estate of the testator to trustees, who happen in this case to be also executors, upon trust to sell and out of the proceeds of sale, after paying debts and funeral and testamentary expenses and pecuniary legacies, to divide the residue among the testator's children in the shares and manner indicated. In other words, it is a strictly proper residue. It is what remains of the testator's property after satisfying the specific gifts, and that strictly proper residue is to be dealt with as the residue should be dealt with, that is, in paying debts and funeral and testamentary expenses and legacies, and then what remains as the ultimate residue, the subject of the testator's bounty, is divided in that character.

"The argument is, that though as regards the executors and as regards the personal estate, what is due from the sons must be brought into account so as to constitute a complete residue, yet as regards the proceeds of sale of the real estate that principle does not apply, and there is this foundation at least for the argument that no case has been produced in which the general rule has been held applicable to such a state of things."

Near the close of his opinion, Judge Kekewich speaks as follows:

"I am not deciding a case where there is a mere gift of real estate, whether it be a gift directly to the legatee or devisee, or through the intervention of a trustee, or by way of trust for sale. But here I am dealing with a case such as I have mentioned—with a general fund made up of proceeds of sale of real estate, and proceeds of conversion of personal estate, and there seems to me to be a principle of general application, and no reason occurs to me, none has been suggested, why I should not apply that principle. Therefore, I think that if there is a debt payable by a residuary legatee under such circumstances as exist here, that debt must, for the purposes of computation, be included in the residue, and—again for the purposes of computation—treated as part of the share going to the legatee debtor."

Thus it will be seen that the English court held that a legatee must pay his debt to the estate before he can receive his part of a *residuary estate*, although such an estate be composed of *realty* as well as *personalty*. And our Texas court, in the Nave Case, adopts that view as being correct. We do not understand that the Nave Case goes any further.

But it will be seen that there is nothing in the Nave Case which holds that a *specific devisee* of *realty* must pay his debt to the general estate before he can receive his specific bequest.

As we have already shown, the English case of In re Akerman holds just to the contrary, and that case was generally commended by Judge Gaines.

It seems to us, further, that the case of Lake v. Copeland, 82 Tex. 464, 17 S. W. 786,

at least *negatively* commits the Texas courts to the doctrine of the Akerman Case relative to specific devises. And we think it must be conceded that the great weight of authority in the United States is in favor of the rule announced in the Akerman Case in this connection. In the Copeland Case, the testator left to his daughter the "Jones place." The provision of the will was that said place was devised "at a valuation of $2,490.00." Title to this place failed, and this devisee asked contribution. Of course, in one sense, that was a *specific devise*. In fact, it is difficult to see how it could have been more specific. But, it was also *demonstrative*. Our Supreme Court held that it was *primarily* the *latter*. In discussing this matter, the court said:

"It is contended by appellants that the apparent intention of the testator from the terms of the will in the setting apart to his daughter and wife of certain specific property simply *indicates* a means of partition of the property that he then regarded as proper in order to reach an equal value in his bequests and devises, and was not intended as specific legacies and devises that would vest in each devisee the absolute title to the thing mentioned; and so contending, insists that the failure of title in the Jones place entitles appellants to a repartition of the property as to contribution from appellee of half the loss sustained. If it be true that the devises created by the will are general or demonstrative, as contradistinguished to specific devises and legacies, then the appellants are entitled to relief."

In the Copeland Case, each piece of property devised was valued, and, as the court said, *value* was the "primary object in making such division," and "not the vesting of absolute title in the thing partitioned."

On the contrary, in the case at bar, we have no reference to values. But we do have specific realty vested in people in "fee-simple title." The only direction in the division of the 300 acres is that each of the three children shall receive 100 acres of equal worth; that said tract of land shall be divided "share and share alike."

[2, 3] It is the first theory of the Court of Civil Appeals herein that this was a *specific devise* of 300 acres of land to the three children of J. H. Bowman, Sr., effective after the latter's death. We are of the view that that holding is correct. The testator had lost his own children. In making his will, he provided, *first*, for his wife. Then provision was made for his brother, who does not seem to have been successful in a business way. The testator was a man of considerable wealth and property. Then he provided for other kin. It is also quite evident that the testator, in disposing of his property, separated all *real estate* from *personalty*, and made different disposition of each class of property. He devised definite amounts of land to definite people, and then provided for

the disposition of the *residuary realty estate*. Furthermore, he provided for the disposition of his personal estate, after first requiring that all his debts be paid out of that particular estate. It is clear, from the will, that the testator was more specific in devising his realty than in disposing of his personalty. And it is also apparent that he did not wish his land sold for his own debts. We fail to see how the devise of the 300 acres here involved could have been more specific, unless it should be said that it was not *definitely located* by metes and bounds, or by other identifying description. But it is not necessary, in order to constitute a devise of land a *specific* one, to describe it with any particular definiteness. In this connection we quote from one of the briefs on file herein, as follows:

"The correct doctrine is laid down by 40 Cyc. p. 1878, as follows:

" '*A devise of land owned by the testator at the time of executing the will is regarded as specific, whether the land is given by specific description, or passes under the residuary clause.*'

"We quote from footnotes on the same page in Cyc. as follows:

" '*A devise to one for life or during widowhood, remainder over, is a specific devise.* McFadden v. Kefley [Hefley] 28 S. C. 317, 5 S. E. 812, [13] Am. St. Rep. 675.'

"And the following:

" 'Residuary devises at common law were specific on the ground that a testator could dispose only of the land owned by him when his will was made and therefore that a residuary devise was a gift of such lands only. Wyman v. Brigden, 4 Mass. 150.'

"We quote from 28 ruling Case Law, p. 291, as follows:

" 'A devise of an undivided portion of specified real estate is deemed to be specific rather than demonstrative or general, and where a testator owns an undivided interest in a tract of land he may leave a certain fractional part of his interest to a particular devisee, and the gift may be treated as a specific devise.'

"We quote from the Supreme Court of Missouri, National Board, etc.,, v. Fry, 293 Mo. 399, 239 S. W. 519, as follows:

" '*All devises of real estate are in their nature specific.*' "

In the case at bar, the testator made several specific bequests of realty. Then all lands not otherwise specifically bequeathed were to constitute the residuary realty, and the latter was also specifically disposed of.

If this 300-acre tract in controversy was a *specific devise*, then the Court of Civil Appeals decided this case correctly, for, in such a situation, the law with reference to *"retainer"* is stated as follows by counsel for J. H. Bowman, Jr.:

"The correct doctrine is laid down in 40 Cyc. p. 1892, as follows:

" '*The debt of a devisee to the testator is not a charge on lands devised to him by the testator in the absence of language in the will making such debt a charge.*'

"We quote from Thompson on Wills (1918 edition), § 324:

" '*In order to charge real estate specifically devised with the payment of debts and legacies, the will must contain an express provision to that effect, or the charge must be clearly and unmistakably implied from the whole will read in the light of all the surrounding circumstances.*'

"We quote from Theobald on Wills, pp. 818, 819, wherein he discusses the express right of retainer as against a person who takes a benefit under the will of the testator, as follows:

" '*The right of retainer* * * * *does not extend to a specific devise of land or a specific gift of leaseholds or chattels.*' "

[4-6] It is conceded that there is no *express provision* in the instant will making this boy's debt a charge on his 100-acre devise. This brings us to a consideration of the question as to whether or not there is any *charge* which "must be clearly and unmistakably implied from the whole will read in the light of all the surrounding circumstances." We do not find evidence of any such intention on the part of the testator. Both lower courts, with all the evidence before them, find, as a fact, that the testator did not *intend* for this boy to be denied his 100 acres, unless and until he had paid his debt to the estate. If the will itself, considered from its four corners only, left the *intention* of the testator of doubtful construction, then outside circumstances would be admissible in evidence. And, in such an event, these findings of the lower courts are binding upon us, if there is any evidence in support thereof. So the only way the executor can prevail in this case is for us to hold that the *will*, by its own terms and within itself, shows that the testator intended to make this boy pay his debt before he could receive his 100 acres of land. After all, the intention of the testator is of controlling effect in the construction of a will. See Lake v. Copeland, supra. That is the cardinal principle. The *only* evidence in the will itself which could have any *possible bearing* upon the testator's intention in this respect is the statement that these three children of J. H. Bowman, Sr., should take the 300 acres "share and share alike." And the will further provided that they should get their one-fourth of the residuary realty share and share alike. And it was still further provided that the three children should take their one-fifth of the *personalty* in *equal* portions. But we do not think this fact of *equality* in the *various* and *separate* kinds of estates bequeathed to the three children indicates any intention that their interest in any one devise in any particular kind of property should be dependent upon the status of their interest in the other kinds of property. On the contrary, we are inclined to believe that the testator intended to leave enough *land*, in fee simple, as he provided, to each of his relatives named, to serve as a home for such

devisee, and that he intended, *primarily,* to give each of his kindred a certain amount of land, regardless of whether or not such legatees realize anything out of the *personal estate* left by the testator. We think the latter intended that J. H. Bowman, Jr., should be made to pay his debt if it could be collected in any other way than by depriving him of his 100 acres of land. And it was quite proper for the lower courts to take his debt into the accounting in dividing the residuary personal estate. We believe the testator desired young Bowman's note included as an asset, but that said note and all other personalty was to be divided, fairly and equitably, among all his legatees mentioned in his will in connection with the personal estate. Of course, if young Bowman and his two sisters had drawn his note in the partition of the personal estate into its five parts, as provided in the will, and then such note had not been paid, it would be true that the maker of the note would get more out of the estate than his sisters. But they could have had their claim against him on the note for their part of the note but for the bankruptcy which ensued. We do not think it is clear that the testator was more interested in giving these two nieces every dollar he could than in giving this boy 100 acres of land which he could, as a last resort, use as a home. Although he was in debt, his uncle may have desired that he have a place on which he could make a living. And, certainly, the testator in this case was under no obligation to leave to any one any particular part of his estate. He had a perfect right to dispose of it as he pleased.

The testator must have known what the 300 acres of land was worth. He must have realized, before his death, that, if his nephew was required to pay his note to him, he would not receive any portion of the 300 acres. The testator, before his death, knew all about these things. But he did not provide that the 100 acres devised was to be subject to the payment of the boy's note. It seems to us that this frugal and successful business man would have either provided *expressly* that this debt must be paid before the 100 acres of land could be received by the boy or that he (the testator) would have added a codicil to his will, leaving the 300 acres to the two nieces only.

It is also a significant fact that, if this boy is cut out of his part of the 300 acres, then it must be held that the testator *intended* to cut out his aged brother from the life estate in the 300 acres, because the record shows that his brother owed more to the estate than the life estate was worth. From the facts in this record, we do not believe he intended to throw his brother out upon the world.

We think the intention of the testator with reference to J. H. Bowman, Senior and Junior, is not *clear* from the terms of the will itself; that it was proper to introduce the surrounding circumstances in the case to assist in that way in construing the will. The lower courts found that the testator did not intend that this boy's debt should be a charge against his 100 acres. The record does not disclose any assignment attacking these findings. If that was the *intention* of the testator, then the lower courts should be affirmed.

[7] In closing, we think the rule with reference to specific devises is a salutary one. That rule simply provides that, where a piece of land is bequeathed specifically to a devisee, the testator intends that the land be taken by the beneficiary, regardless of whether or not that party pays any debt owing the general estate. The great weight of authority holds that the debt will not be a charge against a specific devise, unless it appears from an express provision of the will or from some necessary implication. The rule contended for in this case by plaintiff in error is that, where the will is silent about the paying of a debt, the latter should be held to be a charge upon a devise of realty. We do not think this should be the rule. Many people in preparing their wills might not understand that they had to exempt a specific devisee from the payment of his debt to the estate before he could receive his specific devise of realty.

In view of what the Court of Civil Appeals has said in support of its own decision, and in view also of what we have tried to add, we recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are affirmed, as recommended by the Commission of Appeals.